UNITED BANANA COMPANY, Inc., et al., Plaintiffs,

v.

UNITED FRUIT COMPANY et al., Defendants.

No. 7141.

United States District Court
D. Connecticut.

Feb. 10, 1959.

Rehearing Denied June 3, 1959.

---

582

Robert E. Nickerson, Greenwich, Conn., Ernest Leff, New York City, for plaintiffs.

Frank E. Callahan, Wiggin & Dana, New Haven, Conn., for defendants.

ANDERSON, District Judge.

This is a suit by several Connecticut banana distributors against the United Fruit Company (hereinafter called United Fruit) and its subsidiary, the Fruit Dispatch Company (hereinafter called Fruit Dispatch). Count 1 of the complaint alleges violations of the Sherman Act, 15 U.S.C.A. § 1 et seq., and Counts 2 and 3 allege violations of the Robinson-Patman Act, 15 U.S.C.A. §§ 13–13b, 21a. The answer sets up, inter alia, the defenses of the Federal four year statute of limitations and the Connecticut one year statute of limitations with the Connecticut three year statute of limitations in the alternative. The defendants also especially plead in their answer a justification of their economic position by attributing it to their superior skill and to the operation of natural forces. The plaintiffs have moved to strike the defenses of the statutes of limitations as to the defendant United Fruit on the ground that they were tolled during the pendency of a criminal anti-trust action brought against United Fruit in a United States District Court in Louisiana, and to strike the justification or so-called "thrust upon" defense because that defense does not expressly allege that the defendants acquired their economic position *solely* by virtue of matters beyond their control. The plaintiffs have also moved for the production of certain documents.

Prior to the passage of Section 4B of the Clayton Act, 15 U.S.C.A. § 15b, there was no federal statute of limitations governing civil anti-trust suits, and state statutes were applied by the federal courts. Section 4B became effective on January 7, 1956, and this suit, brought March 4, 1958, is governed by its provisions. LaRouche v. United Shoe Machinery Corp., D.C.Mass.1958, 166 F. Supp. 633; Goodfriend v. Kansas City Star Co., D.C.W.D.Mo.1958, 158 F.Supp. 531; Cardinal Films Inc. v. Republic Pictures Corp., D.C.S.D.N.Y.1957, 148 F. Supp. 156. Therefore, the application of the federal statute limits claims against these defendants to those claims arising after March 4, 1954. However, Section 4B contains a provision that it is not to be construed to revive rights which had expired under state law prior to the effective date of its passage, and the defendants accordingly assert that all claims accruing before January 7, 1955, (i. e. one year before the effective date of the federal statute), should be barred. It is, of course true that if prior to January 7, 1956, the effective date of the federal statute, the Connecticut one year limitation applicable to suits for forfeitures on a penal statute applied to an anti-trust suit, January 7, 1955 would be the cut-off date. The plaintiffs, on the other hand, assert that it is not this one year statute but the Connecticut three year tort statute which applied. These sections of the 1949 Revision of the Connecticut General Statutes provide:

"Sec. 8325. *Suit for forfeiture on penal statute limited to one year.* No suit for any forfeiture upon any penal statute shall be brought but within one year next after the commission of the offense."

"Sec. 8316. *Action founded upon a tort.* No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

The applicability of state limitations on penalty suits to anti-trust litigation has caused a great deal of difficulty to courts in the past. See Report of the Attorney General's National Committee to Study the Anti-Trust Laws, March 31, 1955, p. 381, n. 71; Note, 60 Yale L.J. 553 (1951). Prior to the enactment of Section 4B, limitation was, as above stated, a matter of local law. Chattanooga Foundry & Pipe Works v. Atlanta, 1906, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241; Gordon v. Loew's, Inc., 3 Cir., 1957, 247 F.2d 451; Hoskins Coal & Dock Corp. v. Truax Traer Coal Co., 7 Cir., 1951, 191 F.2d 912. And for the purpose of determining what causes of action had expired under state limitations statutes on the effective date of the federal limitation law, i. e. January 7, 1956, the federal courts must direct their inquiry to state statutes, and to local interpretations of those statutes. Bauserman v. Blunt, 1893, 147 U.S. 647, 13 S.Ct. 466, 37 L.Ed. 316; Dibble v. Bellingham Bay Land Co., 1896, 163 U.S. 63, 16 S.Ct. 939, 41 L.Ed. 72; Hoskins Coal & Dock Corp. v. Truax Traer Coal Co., supra; Greene v. Lam Amusement Co., D.C.N.D.Ga.1956, 145 F.Supp. 346.

Connecticut courts have construed Section 8325 on numerous occasions. The leading case, Plumb v. Griffin, 1901, 74 Conn. 132, 50 A. 1, was an action to recover treble damages from a defendant who had cut timber on the plaintiff's land. Holding that the action was not governed by the one year statute, the court said in 74 Conn. at pages 134–135, 50 A. at page 2:

"The present suit is not barred by [the one-year limitation] unless section 1345, on which it is brought, is a penal statute, one that declares a forfeiture, and one that deals with an offense. [Moreover] it must be a forfeiture and an offense in the sense in which these terms are used in a penal statute. A brief examination shows that section 1345 is not a penal statute, within the meaning of section [8325]. Penal statutes, strictly and properly, are those imposing punishment for an offense against the state. And the expression 'penal statutes' does not ordinarily include statutes which give a private action against a wrongdoer. Bouv.Law.Dict. 'The words "penal" and "penalty," in their strict and primary sense, denote a punishment, whether corporal or pecuniary, imposed and enforced by the state for a crime or offense against its laws.' * * * [A] statute which gives no more than a right of action to the party injured to recover increased damages is not a penal statute." (emphasis added.)

An action to recover double damages for forgery was early held to be not governed by the one year statute. Ross v. Bruce, 1803, 1 Day, Conn., 100. And most recently a suit for double damages for violation of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. was held not limited by Section 8325. Hitchcock v. Union & New Haven Trust Co., 1947, 134 Conn. 246, 56 A.2d 655. In the Hitchcock case, it is true, the court said it did not have to consider whether a "penalty" was involved, because it was bound by a United States Supreme Court determination that such recoveries were "liquidated damages". 134 Conn. at page 257, 56 A.2d 655. But in the Chattanooga Foundry case, the United States Supreme Court held that an anti-trust treble damage claim was not a "penalty" within the meaning of a federal statute placing a five year limitation on suits for penalties and forfeitures. 1906, 203 U.S. 390, 398, 27 S. Ct. 65, 51 L.Ed. 241.

The cases cited by the defendants are not persuasive. The only decisions holding an action to be for a forfeiture within the meaning of Sec. 8325 are Borough of Wallingford v. Hall, 1894, 64 Conn. 426, 30 A. 47; Atwood v. Lockwood, 1904, 76 Conn. 555, 57 A. 279, and Wells v. Cooper, 1888, 57 Conn. 52, 17 A. 281. The Wallingford case involved a forfeiture of $25 to the Borough itself; Atwood concerned a forfeiture of $20 to

any one who sued a delinquent administrator; and Wells dealt with a forfeiture of $5 to any one who sued a non-filing mortgagee. In none of these cases was there any relation between any actual damages and the amount recovered. Indeed, in two of them, any one who sued might have recovered. This has long been considered a key distinction between penal and remedial statutes. See Sullivan v. Associated Billposters and Distributors, 2 Cir., 1925, 6 F.2d 1000, 1009, 42 A.L.R. 503, 515–516.

■ It must, therefore, be concluded that Connecticut courts would not hold this action to be one for a forfeiture within the meaning of Sec. 8325. Discussions of the meaning of the word "penalty" in decisions not involving the statute of limitations have been cited by both the plaintiffs and the defendants, but they are only peripherally relevant. Compare Swanson v. Boschen, 1956, 143 Conn. 159, 120 A.2d 546; Cristilly v. Warner, 1913, 87 Conn. 461, 468–469, 88 A. 711, 51 L.R.A.,N.S., 415 with Hallenbeck v. Getz, 1893, 63 Conn. 385, 28 A. 519 and Porpora v. New Haven, 1936, 122 Conn. 80, 96, 187 A. 668.

■ It is argued that the characterization of an action of this kind as penal or compensatory should be determined by reference to federal, rather than state law. A few courts adopting this theory have concluded that an anti-trust action is penal under federal authorities: see, e. g., Banana Distributors, Inc., v. United Fruit Co., D.C.S.D.N.Y.1957, 158 F. Supp. 160. But the majority of courts interpreting federal law have for the purpose of avoiding a short statute of limitations, found the cause of action to be compensatory. See Fulton v. Loew's Inc., D.C.Kan.1953, 114 F.Supp. 676; Electric Theater Co. v. Twentieth Century-Fox Film Corp., D.C.W.D.Mo.1953, 113 F.Supp. 937; Wolf Sales Co. v. Rudolph Wurlitzer Co., D.C.Colo.1952, 105 F.Supp. 506; Christensen v. Paramount Pictures, D.C.Utah 1950, 95 F.Supp. 446. It is the conclusion of this court, however, as above stated, that for this purpose reference must be made to state law and that the applicable Connecticut statute is the three year, rather than the one year limitation.

■ Still, this finding does not entitle the plaintiffs to go back beyond March 4, 1954; it means only that the rights of action between that date and January 7, 1955 had not been lost on January 7, 1956, the effective date of the federal statute. Section 4B's proviso that no dead rights should be revived does not mean that all rights then existing were to remain preserved forever.

And since the federal statute rather than the Connecticut statute applies, the possible absence of the defendants from Connecticut for purposes of tolling the Connecticut statutes under Conn. Gen. Stat. Section 8330 (Rev.Ed.1949) is not an issue in this case. Cf. Banana Distributors Inc. v. United Fruit Co., supra.

The plaintiffs have acknowledged that all claims against the defendant Fruit Dispatch are barred as of March 4, 1954 because Fruit Dispatch was not a party to the Government suit referred to below. Schreiber v. Loew's Inc., D.C.W.D. Mich.1957, 147 F.Supp. 319, 323; Sun Theatre Corp. v. RKO Radio Pictures, Inc., 7 Cir., 1954, 213 F.2d 284. However, as to the defendant United Fruit, the plaintiffs assert that all claims are open until July 3, 1950. They arrive at this date by virtue of Section 5(b) of the Clayton Act, 15 U.S.C.A. § 16(b), which provides:

"(b) Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the anti-trust laws, * * * the running of the statute of limitations in respect of every private right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter * * *."

The United States brought an anti-trust action against United Fruit in the

District of Louisiana on July 2, 1954. This action was not terminated until February 4, 1958 at the earliest, and since the plaintiffs brought this suit within one year of that date, the federal statute of limitations as to United Fruit would be suspended during the pendency of the Government action. But such suspension only applies to the rights of action asserted here which are "based in whole or in part on any matter complained of" in the Government proceeding.

Section 16(b) has been strictly construed by the courts to limit the tolling effect of the Government action to situations where the United States and the private plaintiff complain of virtually identical acts. See Steiner v. 20th Century-Fox Film Corp., 9 Cir., 1956, 232 F.2d 190. In conspiracy cases, the test approved by the 9th Circuit Court of Appeals was: "The matters complained of in the private proceeding must be the same acts to achieve the same conspiracy complained of in the action brought by the United States." 232 F.2d at page 196.

The defendants claim that the acts or conspiracies alleged by the plaintiffs are different from those complained of in the Government action. "Of course, the test of the validity of [this] position is a comparison of the two suits." Christensen v. Paramount Pictures, D.C.Utah 1951, 95 F.Supp. 446, 451.

This comparison, made on the basis of the amended complaint, statement of issues of fact, and consent decree in the Government suit, juxtaposed against the complaint in the present action, leaves no doubt that the first count of the present action is based in whole or in part on matters complained of in the former suit. The statement of issues of fact sets forth United Fruit's monopolization of banana supply and distribution, its power to set prices and exclude others from the market, and its interference with banana jobber associations. The amended complaint alleges with considerable particularity the combination and conspiracy to monopolize trade in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1, 2. Such allegations are paralleled by specific allegations in the instant complaint. For an example directly on point Paragraph 54F alleged that "By withdrawing sources of supply, selling bananas as a jobber to retailers at unreasonably low prices, and by other means, [United] forced some banana jobbers in the New England area out of business and restricted the growth and operations of remaining jobbers in that area."

The four year federal statute is, therefore, tolled as to the allegations of the first count against United Fruit and the plaintiffs may go back to July 3, 1950 with respect to this part of the action.

If the plaintiffs can prove that the price overcharges, service charge discriminations and price discriminations were engendered by an economic position illegally achieved, such acts will provide the basis for recovery of damages.

It is argued that the cut off date under the first count cannot be extended back to 1950 because while the Government action was brought on July 2, 1954, the Government's amended complaint, carrying the specific references to the New England area set out above, was not filed until January 12, 1956. To support this proposition, the defendants cite Momand v. Universal Film Exchanges, Inc., 1 Cir., 1948, 172 F.2d 37, 49, where the plaintiff's amended complaint of 1934 was not allowed to relate back to 1931, when his action was brought. That case is clearly distinguishable, since the plaintiff in Momand did not possess his causes of action until 1933, when they were assigned to him. The present problem concerns an amended, rather than a supplemental complaint. Since the matters stated in the amendment merely clarify and particularize the original complaint, the amendment relates back to the date when the original pleading was filed. F.R.Civ.P. 15(c), 28 U.S.C.A. Cf. Christensen v. Paramount Pictures, supra.

The defendants also contend that different acts or conspiracies must be in-

volved in Count 1 than in the Government complaint, because the claims in the Government action related to customers of United Fruit. The defendants say the plaintiffs do not claim to be customers of United Fruit under the first count. But there can be no doubt that the plaintiffs are jobbers within the meaning of that term in Paragraph 54 F, quoted above, and I am convinced, on reading of the Government complaint against Count 1 of the plaintiffs' complaint, that the essence of the acts, conspiracies and purposes is the same in both.

On the other hand, Counts 2 and 3 of the instant complaint are not based in whole or in part on matters complained of in the Government action. No reference was made by the Government to Robinson-Patman Act violations.

While Paragraph 54 F did charge United Fruit with interfering with jobbers "by other means" this is too vague an allegation to support tolling of the statute of limitations as to Robinson-Patman claims, when the Government suit was conceived and brought under Sections 1 and 2 of the Sherman Act. The cut off date under the 2nd and 3rd counts as to both defendants is, therefore, March 4, 1954.

*Motion to Strike Thrust Upon Defense*

In Paragraph 32 of the answer the defendants allege:

"32. The matters complained of in the First Count of the complaint as being monopolization of the banana trade were necessary and proper consequences of the superior skill of the defendants, the superiority of their products, natural advantages, their economic and technological efficiency, scientific research, and other manifestations of diligence and industry on the part of the defendants, and were necessitated and justified by the nature of the banana business, and by conditions of the industry resulting from forces beyond defendants' control."

The plaintiffs moved to strike this defense as insufficient as a matter of law. The theory behind the motion is that the defense is good only if the defendants achieved their monopoly position *solely* as a result of the facts alleged in the defense. The plaintiffs assert that the defendants cannot, in good conscience, amend their answer to comply with that requirement.

The plaintiff's motion is grounded on a statement by Judge Wyzanski in United States v. United Shoe Machinery Corp., D.C.Mass.1953, 110 F.Supp. 295, affirmed per curiam, 1954, 347 U.S. 521, 74 S.Ct. 699, 98 L.Ed. 910. At page 342 of 110 F.Supp. Judge Wyzanski wrote:

" * * * the defendant may escape statutory liability if it bears the burden of proving that it owes its monopoly solely to superior skill, superior products, natural advantages * * * "

Such a statement is not authority for requiring the defendants to plead as the plaintiffs suggest.

Existing case law clearly allows the defendants to explain and justify their position. See United States v. Aluminum Co. of America, 2 Cir., 1945, 148 F.2d 416; United States v. E. I. duPont de Nemours & Co., D.C.Del.1953, 118 F. Supp. 41, affirmed 1956, 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264. The issue is clearly raised by the pleading as it stands.

The plaintiffs' motion to strike the defense of justification in Paragraph 32 of the answer is, therefore, denied.

The plaintiffs may go back to July 3, 1950 with respect to the matters alleged in the First Count against United Fruit.

The plaintiffs may go back to March 4, 1954 with respect to the matters alleged in the First Count against Fruit Dispatch, and in the Second and Third Counts against both United Fruit and Fruit Dispatch.

To conform with the rulings above, the order of this court dated September 17, 1958 is hereby amended to allow discovery, disclosure and production of documents back to July 3, 1950 as to United Fruit.

### Supplemental Opinion.

The defendants have asked the court to amend that part of the Memorandum of February 10, 1959, 172 F.Supp. 586, which reads as follows, " \* \* \* the plaintiffs may go back to July 3, 1950 with respect to this part of the action" so that the date July 3, 1950 will be changed to July 3, 1951. They claim that application of the federal tolling statute left enforceable plaintiff's rights which existed on the date of the bringing of the Louisiana action on July 2, 1954 and that the state limitation statute of 3 years, then applicable (the federal statute not having been enacted until January 7, 1956), had left alive at that time (July 2, 1954) rights which had accrued during the 3 years prior thereto, that is, the period back to July 2, 1951.

The defendants argue that the cut-off date cannot go back to July 2, 1950 because of Section 4B of the Clayton Act (15 U.S.C.A. § 15b) which provides:

"No cause of action barred under existing law on the effective date of this section and section 15a and 16 of this title shall be revived by said sections."

However, these assertions by the defendants do not take into consideration the tolling of the Connecticut statute because of the provision of Sec. 8330 of the General Statutes of the State of Conn. (Rev.Ed.1949) and the absence of United Fruit from the State of Connecticut between 1947 and 1953. The defendants may have been misled by the statement in the memorandum of decision, 172 F.Suppp. 585, which reads " \* \* \* the possible absence of the defendants from Connecticut for purposes of tolling the Connecticut statutes under Conn.Gen. Stat. Section 8330 (Rev.Ed.1949) is not an issue in this case." This quoted portion should be amended by adding there-

to the words "except as hereinafter noted". While the defendants' absence from the state and the Connecticut tolling statute were not in issue with respect to the questions as they were discussed in the memorandum, they do need to be considered in dealing with the point now raised by the defendants and discussed in this memorandum.

The Connecticut tolling statute reads as follows:

"Sec. 8330. Defendant's absence from the state to be excluded, when. In computing the time limited in the several cases aforesaid, the time during which the party, against whom there may be any such cause of action, shall be without the state, shall be excluded from the computation."

The issue of United Fruit Company's absence from Connecticut, for the purposes of Section 8330, has already been litigated in the New York case, Banana Distributors, Inc. v. United Fruit Co., D.C.S.D.N.Y.1957, 158 F. Supp. 153, 155. In that case the jury rendered a special verdict finding United Fruit to be "without the state" of Connecticut from 1947 to 1953, and that verdict is binding on United Fruit here. It does not matter that these plaintiffs were not parties to the former suit, for United Fruit, against whom the decision is applied, was a party there and actively litigated the merits of the case. The res judicata effect of that determination is not undercut by the slowly dying theory of mutuality of estoppel. See United States v. Willard Tablet Co., 7 Cir., 1944, 141 F.2d 141, 152 A.L.R. 1194. All that due process requires is that the party who is now being bound was a party to the earlier judgment. Bernhard v. Bank of America National Trust & Savings Ass'n, 1942, 19 Cal.2d 807, 812, 122 P.2d 892, 894. See also Gart v. Cole, 2 Cir., 1959, 263 F.2d 244. Israel v. Wood Dolson Co., 1956, 1 N.Y. 2d 116, 151 N.Y.S.2d 1, 134 N.E.2d 97; Good Health Dairy Products Corp. v. Emery, 1937, 275 N.Y. 14, 9 N.E.2d 758, 112 A.L.R. 401; United States v. Wex-

ler, D.C.E.D.N.Y.1925, 8 F.2d 880; Coca Cola Co. v. Pepsi Cola Co., 1934, 36 Del. 124, 172 A. 260; Jenkins v. Atlantic Coast Line R. Co., 1911, 89 S.C. 408, 71 S.E. 1010; Atkinson v. White, 1872, 60 Mo. 396; cf. Kessler v. Eldred, 1907, 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065; 35 Yale L.J. 607; 18 N.Y.U.L.Q.Rev. 565; 12 Corn.L.Q. 92; 29 Ill.L.Rev. 93; 9 Va.L.Reg. (N.S.) 241; Freeman, Judgments, 932–935 (5th Ed.1925).

■ Since United Fruit may not deny its absence from Connecticut from 1947 to 1953, the operation of Section 8316 is tolled during that period, and causes of action accruing between July 3, 1950 and July 3, 1951 were still alive on the effective date of the federal statute.

It should be understood that although the effect of the Connecticut tolling statute on the rights mentioned goes back to 1947 it does not follow that rights accruing between 1947 and 1950 remained alive for remedial claims in the present action. As stated in the memorandum and now reaffirmed by this supplemental memorandum, it is the *federal* statute of limitations and the *federal* tolling statute which fix July 3, 1950 as the date to which the plaintiffs may go back and Connecticut statutes are only referred to, to determine what of the plaintiffs' claimed accrued rights were dead at the hand of the state limitations statutes and were incapable of being revived when the federal statute of limitations took hold. It is found that the state statutes had killed only those which accrued before 1947, but the federal statutes limit all those which accrued before July 3, 1950.

Defendant's Motion for Rehearing.

On a rehearing, the defendant, United Fruit Company, has urged the Court to reconsider the portion of the decision of February 10, 1959, which gave the plaintiffs the benefit of the tolling provision of the Clayton Act, 15 U.S.C.A. § 16(b), as to the first count of the complaint. Familiarity with the facts as set out in the earlier opinion will be assumed, and they will not be repeated here.

The defendant asserts that the court was under a misapprehension as to the scope and intent of the Government's action against United Fruit, in Louisiana, on which the tolling was predicated. It is now claimed that ¶54F of the Government's complaint in that case, quoted in the previous opinion, related to activities of United Fruit in Rhode Island and Massachusetts and not to the kind of activities complained of by these plaintiffs in Connecticut. Even if this is so, it does not thus appear on the face of the complaint, and, moreover, the previous decision did not rest solely on ¶54F, which was cited only as an example. It is apparent from the complaint and the consent decree in the Louisiana case that activities similar to those complained of in the present action were alleged in the Louisiana case, involving not only New England, but the whole United States. The defendant would confine the relevant portion of the Louisiana case to an implied reference to the Meloripe Fruit Company's activities. But, as above noted, the complaint is much broader than this and it is the complaint which is of paramount importance for the purpose of the tolling statute. Otherwise the plaintiff in a private party case would never know at what stage of a Government case the tolling began. A plaintiff should not have to guess at his peril the intention underlying the normal meanings of words.

It is also claimed, with reliance on several cases which had been cited to the court before, that there was insufficient identity of issues for tolling to operate. See, e. g., Momand v. Universal Film Exchange, D.C.Mass.1942, 43 F. Supp. 996, 1012; Steiner v. 20th Century-Fox Film Corp., 9 Cir., 1956, 232 F.2d 190, 196. But there is a greater degree of identity present here than there was on the facts of those cases, which concerned the motion picture industry. Examination of the decision in Momand shows that Judge Wyzanski

**590**

used as his criterion a comparison of the "substance" of the two cases. The substance of the Louisiana action was that United Fruit was a nation-wide monopoly with the power, for one thing, to set prices. The substance of the first count of the present declaration is that United Fruit had monopoly power in the Connecticut market area, by virtue of which it set arbitrary prices and injured the plaintiffs. It is not necessary that the Government set out these very acts in its complaint; substantial, not absolute, identity of matters is all that is required.

The motion to modify the earlier ruling is denied.