**WHITE MOUNTAIN APACHE TRIBE OF ARIZONA, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 22–H.**

United States Claims Court.

Sept. 4, 1985.

William H. Veeder, Washington, D.C., for plaintiff. Robert C. Brauchli, White River, Ariz., of counsel.

James M. Upton, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht, II, for defendant.

## ORDER

NETTESHEIM, Judge.

On July 12, 1984, defendant moved pursuant to RUSCC 12(b) for an order dismissing the claims of plaintiff White Mountain Apache Tribe of Arizona ("plaintiff") concerning range and water resource mismanagement. Alternatively, defendant moved for an order providing that no evidence be admitted at trial with respect to these claims. Plaintiff has opposed and defend-

---

1. Plaintiff is the sole remaining party prosecuting claims in this action. *See White Mountain*

ant has replied. Ruling on this matter was deferred pending appellate review of a judgment terminating this litigation. *See White Mountain Apache Tribe v. United States,* 6 Cl.Ct. 575, 577 n. 2 (1984), *vacated & remanded,* Nos. 85–895 & 85–1348 (Fed. Cir. Aug. 7, 1985).

## FACTS

Plaintiff filed its petition with the Indian Claims Commission on October 27, 1959. As it relates to plaintiff's general accounting claim, the petition states:

13. Plaintiffs [1] further allege that in accordance with defendant's established and long continued policy and practice in dealing with Indian tribes, and by virtue of the acts of defendant alleged in paragraph 6 hereof, and by other acts of Congress, Executive acts, and acts of officers and agents of defendant, including, but without limitation, Executive Order of November 1871, Executive Order of December 14, 1872, Act of February 20, 1893 (27 Stat. 469), Act of June 10, 1896 (29 Stat. 358), Act of June 7, 1897 (30 Stat. 64), Act of March 2, 1901 (31 Stat. 952), and by the Act of March 3, 1883 (22 Stat. 582, 590) and the Act of March 2, 1887 (24 Stat. 449, 463) as amended by the Act of May 17, 1926 (44 Stat. 560), and the Act of February 12, 1929 (45 Stat. 1164) as amended by the Act of June 13, 1930) (46 Stat. 584), the defendant undertook various obligations to plaintiffs, including moral obligations, and further undertook, as a trustee, guardian and fiduciary, to manage, dispose, sell, lease, use, hold, invest and otherwise deal with lands, funds and other property belonging to plaintiffs, and to provide services and other benefits to plaintiffs.

\*   \*   \*   \*   \*   \*

16. Plaintiffs allege, upon information and belief, that a true and complete accounting will disclose that substantial sums of money are owed by defendant to

---

*Apache Tribe v. United States,* 4 Cl.Ct. 575, 578 n. 1 (1984) (order imposing sanctions).

plaintiffs, arising out of mismanagement by defendant of plaintiffs' affairs, arising out of failure [of] defendant to collect fees, compensation and damages for plaintiffs' property which was sold or used, arising out of negligently permitting plaintiffs' lands to be over-grazed, arising out of erroneous surveys made by defendant of plaintiffs' lands, arising out of improper disbursements by defendant from plaintiffs' funds for purposes and expenses which were in contravention of defendant's long continued policy and practice in dealing with Indian tribes, and in contravention of fair and honorable dealing and in violation of defendant's duties to plaintiffs as a trustee and guardian, and arising out of breaches of other obligations of defendant to plaintiffs.

On May 26, 1983, plaintiff filed a motion for additional time to prepare the claims encompassed by its petition. The motion, like the petition, contained allegations of governmental mismanagement of tribal properties and emphasized plaintiff's claims concerning overgrazing by trespassing livestock insofar as it caused erosion and insofar as defendant failed to collect grazing fees for use of plaintiff's lands. In that pleading, however, plaintiff, by counsel, stated:

Although no claim for remuneration appears to have been made on behalf of the White Mountain Apache Tribe for the trespasses upon the White Mountain Indian Reservation, all as pleaded above, the former claims attorney made specific reference to the protracted misconduct and mismanagement by the Secretary of the Interior of the White Mountain Apache Indian Reservation for a period of almost thirty years. On the subject, the former claims attorney had this to say: "Shortly after the reservation was established, white ranchers, with their cattle, trespassed upon the grazing lands and over the years these trespasses increased. By the early 1890's, thousands of white owned cattle were being illegally grazed upon the reservation, [notwithstanding] the assurance and promise by

the government that it would protect the tribal group from encroachment in the reservation ..." [sic] [citing the opening statement of plaintiff's then counsel before the United States Court of Claims on May 1, 1978].

Plf's. Mot. filed May 26, 1983, at 9–10 (footnote omitted). This statement could be viewed as an admission that plaintiff's claims for erosion caused by overgrazing and failure to collect fees for overgrazing were not contained in the 1959 petition. However, a review of the earlier pleading, as discussed in the body of this order, reveals that such a concession was unwarranted and will be ignored.

Specific reference to the water and range claims which defendant now seeks to dismiss again was made through interrogatories served on plaintiff's counsel on September 21, 1983. The first paragraph of defendant's interrogatories states that its inquiry is "organized into two broad areas: (1) range management; and (2) water resource management." Plaintiff was requested to address the following questions with respect to range management:

5. Does plaintiff contend that the United States had a legal duty to prevent any erosion of the range lands of the White Mountain and Fort Apache Reservations?

\* \* \* \* \* \*

9. Does the plaintiff contend that the defendant had a legal duty to maximize the potential income from the range lands of the two reservations?

Among other interrogatories of a similar nature concerning water resource management, defendant posed the following:

18. Does the plaintiff assert that its *Winters* Doctrine rights were diminished or lost by appropriations of water from the Salt River or its tributaries for use [by the federal government] on adjacent National Forest lands? (Emphasis in original.)

\* \* \* \* \* \*

22. Does plaintiff assert that the United States had a legal obligation to develop all the potentially (or practicably) irrigable acreage on the reservation?

The *Winters* Doctrine is derived from the decision in *Winters v. United States*, 207 U.S. 564, 28 S.Ct. 207, 52 L.Ed. 340 (1908). Under the doctrine the United States Government's reservation of land for a federal purpose, such as the creation of an Indian reservation, carries with it an intention to reserve rights to the use of water for the land "to the extent needed to accomplish the purpose of the reservation." *Gila River Pima-Maricopa Indian Community v. United States*, 231 Ct.Cl. 193, 212, 684 F.2d 852, 864 (1982). On October 28, 1983, plaintiff answered all of these interrogatories in the affirmative, supplying a narrative of plaintiff's view of its claims.[2]

■ Section 12 of the Indian Claims Commission Act of 1946, Pub.L. No. 726, 60 Stat. 1049, 1052 (1946) (codified at 25 U.S.C. § 70k (1976)) (repealed in 1978), sets forth the statute of limitations governing claims such as plaintiff's. *Navajo Tribe v. United States*, 220 Ct.Cl. 360, 364, 601 F.2d 536, 538 (1979) (citing *United States v. Lower Sioux Indian Community*, 207 Ct.Cl. 492, 501, 519 F.2d 1378, 1382 (1975); and *Snoqualmie Tribe v. United States*, 178 Ct.Cl. 570, 586, 372 F.2d 951, 960 (1967)). "25 U.S.C. § 70k ... bars claims existing before August 13, 1946, but 'not presented within' five years thereafter...." *Minnesota Chippewa Tribe v. United States*, 768 F.2d 338, at 340 (Fed. Cir.1985). In effect all causes of action arising before August 13, 1946, are relinquished unless presented before August 13, 1951. *Lower Sioux Indian Community*, 207 Ct.Cl. at 501, 519 F.2d at 1383.[3]

Defendant contends that plaintiff's water and range claims represent new causes of action for which the petition supplied no notice and accordingly are time barred under 25 U.S.C. § 70k. Defendant seeks dismissal of plaintiff's claim concerning the development of irrigable land on the ground that it fails to state a claim upon which relief may be granted.

### DISCUSSION

■ For purposes of ruling on defendant's motion to dismiss for failure to state a claim under RUSCC 12(b)(4), plaintiff's allegations of fact will be both accepted and construed in the light most favorable to plaintiff, *see, e.g., Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), although insofar as defendant's motion challenges lack of subject matter jurisdiction under RUSCC 12(b)(1), that presumption does not apply. *See McNutt v. General Motors Corp.*, 298 U.S. 178, 184, 56 S.Ct. 780, 782, 80 L.Ed. 1135 (1936); *Bettini v. United States*, 4 Cl.Ct. 755, 757 (1984) (order denying motion to dismiss). Moreover, plaintiff's argument that defendant cannot raise the bar of the statute of limitations at this date has been rejected soundly in, *e.g., Matson Navigation Co. v. United States*, 284 U.S. 352, 359, 52 S.Ct. 162, 165, 76 L.Ed. 336 (1932); *Menominee Tribe v. United States*, 726 F.2d 718, 720–21 (Fed.Cir.) *cert. denied,* —— U.S. ——, 105 S.Ct. 106, 83 L.Ed.2d 50 (1984); and *Capoeman v. United States*, 194 Ct.Cl. 664, 667, 440 F.2d 1002, 1003 (1971), and recently in *Minnesota Chippewa Tribe v. United States*, 768 F.2d 338, 340, n. 2.

### *The Doctrine of Relation Back*

■ Under the doctrine of relation back, an otherwise time-barred claim will survive a motion to dismiss if notice of the claim, or notice that it might arise, is provided by a

---

2. Plaintiff's response to interrogatory No. 18, as well as other interrogatories related to water resources, does not allege a loss or diminution of *Winters* Doctrine rights, but rather the "suppression" of those rights.

3. Defendant explains that the petition in Docket No. 22–H was filed in October 1950. "The Commissioner severed Docket No. 22 information into a large number of dockets to make it manageable." Def's Br. filed July 12, 1984, at n. 1. That the petition under discussion was filed in 1959 is therefore of no moment.

timely filed original pleading. Assuming adequate notice exists, the supplemental claim or pleading will be deemed to relate back to the date that the original pleading was filed. *Snoqualmie Tribe*, 178 Ct.Cl. at 587, 372 F.2d at 960. However, "[I]t is still the rule that an amendment which states [an] entirely new claim for relief ... will not relate back...." *3 Moore's Federal Practice,* ¶ 15.15[3], at 15–196 (2d ed. 1984). Despite the restrictive position that the Federal Circuit adopted in *Minnesota Chippewa Tribe,* 768 F.2d 338, at 340, holding the relation back doctrine inapplicable to plaintiffs' motion for separate accounting, it nevertheless recognized that the term "presented" in 25 U.S.C. § 70(k) as it relates to the presentation of claims " 'should be read liberally to permit an amended pleading to relate back where there is sufficient notice.' " *Minnesota Chippewa Tribe, id.* (quoting *Snoqualmie Tribe,* 178 Ct.Cl. at 586–588, 372 F.2d at 959–61).

### Standards for Notice and New Causes of Action

Two standards govern what constitutes adequate notice pursuant to RUSCC 15(c) (identical to Rule 13(c) of the Indian Claims Commission). Under the first adequate notice is deemed to exist if the claim asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleading. Under the second standard, an adverse party will be considered fairly apprised of a claim if that claim arises out of the same general fact situation presented in the original pleading. *Snoqualmie Tribe,* 178 Ct.Cl. 587–88, 372 F.2d at 960–61; *accord Minnesota Chippewa Tribe,* 768 F.2d 338, at 340. ("[I]nquiry ... focuses on the notice given by general fact situation set forth in ... original pleading...." (citation omitted)). A complaint must be read broadly to determine whether it provides the defendant with fair notice of the claim. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Thus, an amendment or supplemental pleading which merely makes more specific that

which already has been alleged will relate back to the date when the original pleading was filed. *Bethlehem Fabricators, Inc. v. Britain Overseas Airways Corp.,* 434 F.2d 840, 844 (2d Cir.1970). Similarly, the relation back doctrine will apply to an amendment which merely clarifies or particularizes the original complaint. *See 3 Moore's Federal Practice, supra,* ¶ 15.15[3], at 15–194–95 n. 2 (citing *United States v. Somers Construction Co.,* 184 F.Supp. 563, 567 (D.Del.1960); and *United Banana Co. v. United Fruit Co.,* 172 F.Supp. 580, 586 (D.Conn.1959)). For example, in *Smith v. Piper Aircraft Corp.,* 18 F.R.D. 169 (M.D. Pa.1955), the court held that a new cause of action was not expressed by an amendment which "merely expanded or amplified what was alleged in support of the cause of action already asserted." 18 F.R.D. at 174 (quoting *Seaboard Airline Ry. v. Renn,* 241 U.S. 290, 293, 36 S.Ct. 567, 568, 60 L.Ed. 1006 (1916) ).

An alternative standard established by the Court of Claims in *Menominee Tribe of Indians v. United States,* 650 F.2d 286, 223 Ct.Cl. 662, 664–65 (1980), indicates that an original pleading may supply notice of a claim proffered in a supplemental pleading if the original pleading "adds a catchall ... clause to include other wrongs" or groups claims in such a fashion so that the grouping may be viewed as inclusive of claims not mentioned.

### Claims for Erosion, Income Maximization, and Winters Doctrine Rights

Plaintiff's original petition contains in paragraph 13 assertions concerning defendant's fiduciary obligation "to manage, dispose, sell, lease, use, hold, invest, and otherwise deal with lands ... and other property belonging to plaintiffs, and to provide services and other benefits to plaintiffs." Similarly paragraph 16 of the petition states that "substantial sums of money are owed by defendant to plaintiffs, arising out of mismanagement by defendant of plaintiffs' affairs, arising out of failure [of] defendant to collect fees, compensation and damages for plaintiffs' property which was sold or used, arising out of negligently

permitting plaintiffs' lands to be overgrazed...."

Defendant contends that the petition contains no mention of water resources or *Winters* Doctrine rights, erosion, or failure to maximize income from range land and therefore fails to supply notice of plaintiff's water and range claims. However, the standards for adequate notice do not require that the petition contain a specific reference to that which is in the supplemental pleading. Modern pleading practice requires only that the pleadings apprise the opposing party of the nature of the litigation and the claims to be raised. "The evidentiary material supporting these general statements ... should not be set out in the [original] pleadings but rather should be left to be brought to light during the discovery process...." 5 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1281, at 363 (1969).

Mismanagement of tribal properties and the breach of trust flowing therefrom constitute both the conduct complained of and the general fact pattern presented in plaintiff's petition filed on October 27, 1959. "Some reference in the original pleading, however hazy, to the conduct later complained of is....' all that is required. *Menominee Tribe*, 650 F.2d 286, 223 Ct.Cl. at 665. Thus, plaintiff's water and range claims as they appear in the answers to interrogatories satisfy both standards for adequate notice under the relation back doctrine.

With respect to soil erosion, paragraph 16 of the petition contains allegations that defendant permitted reservation lands to be overgrazed, which logically comprises one result, erosion. *See* Plf's Mot. filed May 26, 1983, at 8. As for plaintiff's claim pertaining to income maximization, paragraphs 13 and 16 of the petition refer to defendant's "failure ... to collect fees, compensation and damages for" the sale and lease of plaintiff's property. Finally, the fact that the petition refers to and makes the distinction between "lands and *other property*" arguably supports the proposition that the petition contains allegations of water resource deprivation or the infringement of *Winters* Doctrine rights. (Emphasis added.)

*Bethlehem Fabricators, Inc.*, 434 F.2d 840; *Somers Construction Co.*, 184 F.Supp. 563; and *United Banana Co.*, 172 F.Supp. 580, negate the need for specificity in the original pleading. These cases are permissive of the relation back of a supplemental pleading which "makes more specific" or particularizes general allegations made in an original complaint. Plaintiff's water and range claims as they appear in their answers to interrogatories do just this by supplying detail to the petition's reference to land and property mismanagement, overgrazing, and the allegations concerning defendant's neglect towards plaintiff's financial affairs. Moreover, the expansion or amplification of that which initially was presented in plaintiff's petition also serves to negate defendant's contention that the subsequent claims represent new causes of action. *See Smith v. Piper Aircraft*, 18 F.R.D. at 174.

Defendant's principal authority that the relation back doctrine is inapplicable to the facts of this case is *Northern Paiute Nation v. United States*, 218 Ct.Cl. 699 (1978). That case, however, presented the sharp contrast between claims asserting taking of property without just compensation and those later sought to be prosecuted for the Government's alleged failure to perform its promises to take the necessary steps to enable the Indians to change their way of life so that they could survive and prosper on the reservation.

In addition to satisfying the standards for giving adequate notice, plaintiff has also satisfied the alternate notice standard adopted by the Court of Claims in *Menominee Tribe*, 650 F.2d 286, 223 Ct.Cl. 663, by incorporating language into its petition indicating that the petition is inclusive of claims not specifically mentioned. As required under the standard, the petition contains a "catchall" clause and groups all claims within the category of breach of trust. Paragraph 16 of plaintiff's petition

**684**

specifies certain breaches of the trust relationship but closes with a "basket clause," alleging that "substantial sums of money are owed by defendant to plaintiff ... arising out of *breaches of other obligations* of defendant to plaintiff." (Emphasis added.) Even if defendant credibly could contend that other portions of plaintiff's petition failed to supply notice of the water and range claims, the closing argument of paragraph 16 would serve as adequate notice of such claims.

Plaintiff's petition therefore provides adequate notice of the erosion, income maximization, and *Winters* Doctrine claims. Accordingly, these claims relate back to the date on which the petition was filed and are not barred by the statute of limitations in 25 U.S.C. § 70k. Imposition of a preclusionary sanction in these circumstances is unwarranted.[4]

*Claim for Failure To Develop Irrigable Acreage*

 Plaintiff's contention that defendant is liable for neglecting to develop "all the potentially (or practically) irrigable acreage" on the Fort Apache Reservation fails to state a claim upon which relief may be granted. *Gila River Pima-Maricopa Indian Community v. United States*, 231 Ct.Cl. at 213–14, 684 F.2d at 865, holds that the United States has no obligation to construct irrigation facilities for the Indians. Plaintiff's claim, however, is dismissed only to the extent that damages are sought concerning a development obligation. Any claim alleging that the Government diverted, prevented, or neglected to supply water for irrigation remains viable and shall be adjudicated under plaintiff's claims concerning water resources or suppression of *Winters* Doctrine rights.

### CONCLUSION

Based on the foregoing, defendant's motion is granted in part and denied in part.

IT IS ORDERED, as follows:

4. Nothing herein, however, indicates that any duty allegedly owed by defendant has been es-

1. Defendant's motion to dismiss is denied with respect to plaintiff's claims concerning erosion of range lands, maximization of potential income from the range lands of the reservation, and suppression of water resources or rights under the *Winters* Doctrine.

2. Defendant's motion to dismiss is granted insofar as plaintiff's claim that the United States had a legal obligation to develop all the potentially (or practically) irrigable acreage on the White Mountain Apache Reservation, and that claim hereby is dismissed.