**CIENEGA GARDENS, et al., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 94–1C.**

United States Court of Federal Claims.

Dec. 11, 1996.

■

---

Everett C. Johnson, Jr., Washington, D.C., with whom was Susan S. Azad, Los Angeles, CA, for plaintiff.

John E. Kosloske, Washington, D.C., with whom were Assistant Attorney General Frank W. Hunger and David M. Cohen of the U.S. Department of Justice and Kathleen Burtschi of the Department of Housing and Urban Development, for defendant.

## OPINION

ROBINSON, Judge:

This case is before the court on defendant's motion for partial summary judgment and new plaintiffs' cross-motion for summary judgment. The original plaintiffs in this action, which are general or limited partnerships who are owner-participants in the programs detailed below, were joined by 21 "new plaintiffs" pursuant to this court's April 1, 1996 Order. This Opinion concerns new plaintiffs' claims. New plaintiffs' first amended complaint seeks damages for breach of contract (Count I), just compensation for a taking under the Fifth Amendment to the United States Constitution (Count II), and damages based on allegedly unlawful and improper administrative actions (Count III).

Defendant moves for partial summary judgment as to Counts I and III. New plaintiffs move for partial summary judgment as to Count I. The court considers these motions in light of its Opinion in *Cienega Gardens v. United States*, 33 Fed.Cl. 196 (1995) ("*Cienega I*"). As a result, the court grants new plaintiffs' motion for partial summary judgment as to Count I and defendant's motion as to Count III, while denying defendant's motion as to Count I. Additionally, the court denies defendant's motion to strike some of new plaintiffs' claims with regard to Count I.

### Factual Background

During the 1960s and 1970s, in response to a national housing crisis, Congress authorized the Department of Housing and Urban Development ("HUD") to provide mortgage insurance, below-market rate loans, and interest subsidies to stimulate private development of low-income resident housing. Each

plaintiff agreed, under either section 221(d)(3) or 236 of the National Housing Act, as amended, 12 U.S.C.A. § 1715*l*(d)(3) & § 1715z–1, to construct such housing and entered into Regulatory Agreements with HUD governing their operation. The mechanics of the program were such that each plaintiff entered into a long-term deed of trust with a private lender by executing a note. The terms regarding prepayment of the mortgages were contained within a rider to the deed of trust notes; the Regulatory Agreement each plaintiff entered with HUD made no mention of prepayment rights. HUD endorsed each note and stated the note was insured under either section 221(d)(3) or section 236 and federal regulations in effect at the time. Also, HUD entered into a contract of mortgage insurance with each lender. Defendant has claimed that HUD was not a party to the note, but merely insured the note by endorsing the mortgage.

Depending on the type of note involved, there were certain restrictions placed upon the project owner's ability to prepay the mortgage. A section 221(d)(3) note forbade prepayment without HUD approval until 20 years after the original HUD endorsement of the note. Additionally, the owner had to be a limited distribution mortgagor. Under a section 236 note, prepayment was also forbidden without HUD approval unless either to release an individual unit for sale under specified conditions, or until 20 years had passed, provided the maker of the note was a limited distribution mortgagor not receiving payments under a rent supplement contract. Plaintiffs claim that the right to prepay was a material term of their contracts with the government without which they would not have entered into these agreements. Plaintiffs have stated that but for congressional action, they would have prepaid their mortgages, terminated the Regulatory Agreements, and maximized their investments by converting the projects to more profitable, conventional uses.

Through the enactment of the Emergency Low Income Housing Preservation Act ("ELIHPA" or "Title II"), which took effect on February 5, 1988, a temporary moratorium was placed upon prepayment rights. Pub.L. 100–242, 101 Stat. 1877 (reprinted as amended at 12 U.S.C.A. § 1715*l* (note) (West 1989)). To prepay, plaintiffs claimed ELIHPA required them to demonstrate that their prepayment would not materially affect the availability of decent housing for low-income families near job opportunities and would not affect minority housing opportunities within the communities in which the properties were located. If owners were unable to satisfy these conditions for prepayment (or if they desired to remain in the program), HUD was authorized to provide them with financial incentives.

As ELIHPA was intended to serve only as a temporary measure, Congress passed the Low–Income Housing Preservation and Resident Homeownership Act of 1990 ("LIHPRHA" or "Title VI"). Pub.L. 101–625, 104 Stat. 4249 (reprinted at 12 U.S.C.A. § 4101 *et seq.* (West 1993)). LIHPRHA continued ELIHPA's restrictions on prepayment and provided that any prepayment not in compliance with the provisions of Title VI was null and void. The conditions for obtaining HUD's allowance of prepayment were essentially the same in Title VI as they were in Title II. Plaintiffs have claimed they have been unable to satisfy the prepayment conditions of either act.

In *Cienega I*, this court adjudicated similar partial summary judgment cross-motions arising from the claims of the original plaintiffs in this case and the contentions of the government. The arguments presented by *Cienega I* plaintiffs are essentially the same as those presented by plaintiffs in the present motion. The court finds no reason to deviate from the substance of its rulings in *Cienega I* and, accordingly, finds for new plaintiffs on the breach of contract claim and for defendant on the statutory damages claim.

### Contentions of the Parties

New plaintiffs in this action claim to be limited distribution mortgagors who entered into section 221(d)(3) or section 236 agreements with HUD. None claims to be receiving payments under a rent supplement contract. Each claims it was entitled to prepay its mortgage 20 years after the date of

HUD's endorsement. As of the date of this Opinion, prepayment dates have passed for all new plaintiffs and each has been effectively barred from unrestricted prepayment of its mortgage and the contemporaneous emancipation from the regulatory strictures of HUD. Therefore, new plaintiffs allege that defendant has breached its contracts with new plaintiffs through Congressional abrogation of their unfettered prepayment rights.

New plaintiffs also claim that the incentives offered by the Title II and Title VI programs fail to compensate adequately for the alleged breach of their contracts. Further, new plaintiffs claim these incentive programs do not compensate them for the alleged takings of their properties for public use (Count II) or the administrative misconduct alleged in Count III. However, the court does not reach these claims as they are not subjects of new plaintiffs' pending motion. New plaintiffs do claim, however, that their breach of contract claim in the pending motion is governed by the law of the case and, therefore, that the result in *Cienega I* compels the court's disposition of new plaintiff's cross-motion in their favor. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16, 108 S.Ct. 2166, 2177–78, 100 L.Ed.2d 811 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983)).

Defendant resurrects its argument from *Cienega I* that it is not a party to an agreement containing prepayment restrictions, and, therefore, could not have breached a provision to which it was not a party. Defendant argues that the prepayment language contained in the notes was intended to bind only each plaintiff and its lender, and that prepayment eligibility was always to be determined by applicable regulations. Defendant claims HUD's approval of the forms used by plaintiff and lender did not indicate an intent by the government to be bound by the terms of those documents, and that there is no evidence of any negotiations or agreements between the parties as to prepayment terms. For this reason, defendant argues it is entitled to partial summary judgment as to all breach of contract claims.

Additionally, defendant claims it is entitled to partial summary judgment as to the claims of administrative misconduct as would be consistent with this court's ruling in *Cienega I*. Defendant argues that this court lacks appropriate jurisdiction to deal with new plaintiffs' claims in Count III. In Count III, new plaintiffs claim damages for three instances of alleged wrongdoing: (1) unlawful delays in the promulgation of regulations and requests for incentives; (2) failure to provide retroactive payment of incentives; and (3) the promulgation of appraisal guidelines that result in value determinations of new plaintiffs' property at levels far below fair market value.

## DISCUSSION

■ The court will grant a motion or cross-motion for summary judgment where there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. Rule 56(c) of the Rules of the United States Court of Federal Claims ("RCFC"); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The standard for whether there is a material issue of disputed fact is whether a reasonable finder of fact could return a verdict in favor of the non-movant. *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed.Cir.1987). In determining entitlement to summary judgment, the court must resolve any doubts about disputed factual issues in favor of the non-moving party. *Housing Corp. of America v. United States*, 199 Ct.Cl. 705, 710, 468 F.2d 922, 924 (1972). The court may look beyond the pleadings to determine in which party's favor the questions of law will be resolved and whether any apparent issues of fact are merely illusory. Application of those standards leads the court to its decision below.

## I. Breach of contract

■ On the subject of breach of contract, the court finds that this case is controlled by its determination of this issue in *Cienega I*. In that case, the court found that plaintiffs

had established a breach of contract claim and that defendant's argument against finding privity of contract was deficient and without merit. In *Cienega I* and this case, "when the parties in this case entered into the regulatory agreement they also intended to be mutually bound by the prepayment rules set forth in the rider to the contemporaneous deed of trust note." *Cienega Gardens,* 33 Fed.Cl. at 210. The contracts at issue in the present case arose from the same set of transactions as the transactions in *Cienega I.* Therefore, the court sees no reason to defy consistency by upsetting or modifying its analysis in *Cienega I,* which found for plaintiffs on the issue of breach.

Defendant, however, raises the issue of subsequent legislation and agreements, which it claims serve as a basis for distinguishing these plaintiffs from the original plaintiffs. The court does not find these arguments persuasive on the issue of breach of contract. There is one question for decision: Did Congress, through promulgation of ELIHPA and LIHPRHA, abrogate each new plaintiff's right to prepay its mortgage after 20 years and free itself from the strictures of HUD's regulatory program?

Defendant advances arguments related to the effect of legislation subsequent to ELIHPA and LIHPRHA and various agreements between defendant and individual new plaintiffs that it claims necessitate partial summary judgment in its favor. There are four categories of such legislation and agreements: (1) the Housing Opportunity Program Extension Act of 1996 ("1996 Act"), Pub.L. 104–120, Section 2, 110 Stat. 834; (2) 40–year rent supplement contracts; (3) section 8 or housing assistance payment ("HAP") contracts; and (4) HELP loans or earthquake assistance agreements. The court will examine the effects of each. However, by way of preview, the court finds that the 1996 Act does not bar the breach of contract claims of those four new plaintiffs it most directly affects, i.e., those new plaintiffs with prepayment dates following the effective date of the 1996 Act[1]. It also fails to restore

unfettered prepayment rights for the 17 remaining new plaintiffs. As for the various subsequent agreements between new plaintiffs and defendant, the decision on the question of breach is not disturbed. The effect of those agreements is one for the damages phase of these proceedings; breach is decided for plaintiffs.

To begin, there are five new plaintiffs[2] wholly unaffected by the various legislation and agreements discussed by the parties. For these new plaintiffs, the breach claims remain decided in their favor and they will be unaffected during the damages phase of these proceedings by any mitigatory effect these agreements and legislation may have upon the claims of the 16 other new plaintiffs.

Defendant's argument that the 1996 Act restores prepayment rights fails to absolve it from the breach of contract claims, including those four with prepayment dates subsequent to the 1996 Act's effective date. The 1996 Act fails to restore *unfettered* prepayment rights, rather, it adds new conditions for any plaintiffs seeking prepayment. The liability for breach of contract must be adjudged to remain with the government. Any mitigatory effect that the 1996 Act may have upon the damages suffered by new plaintiffs is more appropriately addressed in the damages phase of these proceedings. Further, defendant's motion to strike the claims arising out of the 1996 Act, which it claims are outside the scope of the first amended complaint, is denied. As the breach of contract claims arising out of the 1996 Act arise from the same circumstances as alleged in the first amended complaint, the claims are allowed to stand. *White Mountain Apache Tribe v. United States,* 8 Cl.Ct. 677, 682 (1985).

On the question of the other agreements entered into by new plaintiffs and defendant, the court finds that those issues are tangential to the central issue. The court is directly concerned with the question of whether there was a breach of contract by the government. The subsequent and supplementary agree-

---

1. Beck Park, Drehmoor Apartments, Livermore Gardens, and Villa Fontana.

2. Blossom Hill Apartments, Kings Canyon Apartments, Lawrence Road Apartments, Skyline View Gardens, and Village Green.

ments between defendant and new plaintiffs are more appropriately addressed to the issue of damages.

On the issue of the 40–year rent supplement contracts, which relate to the claims of eleven of the new plaintiffs [3], defendant alleges that the execution of these contracts precludes a finding of breach for these plaintiffs. The court disagrees. These contracts do not alter the fact that defendant breached its contracts with these new plaintiffs through enactment of ELIHPA and LIHPRHA. The effect of these contracts is relegated to their effect upon the damages claims of these new plaintiffs. These contracts may serve to mitigate or even eliminate the damage claims of the new plaintiffs, but they do not require the court to disturb its finding as to the question of liability.

Ten of the new plaintiffs entered into section 8 or HAP contracts with defendant [4]. Defendant claims that the effect of these agreements is to impose use restrictions upon all tenant-occupied units in these projects. According to defendant, these restrictions required the continued maintenance of rent controls even in the event of prepayment by new plaintiffs. Thus, defendant reasons that these ten plaintiffs have suffered no damages by reason of ELIHPA, entitling defendant to partial summary judgment as a matter of law. However, defendant may only be correct with regard to part of the last statement: new plaintiffs may be entitled to no damages if the HAP contracts are found to have such an effect. But that issue fails to speak to the question of liability for the initial breach. While the HAP contracts may affect the damage award, these contracts do not speak to the prepayment issue, and that is the one with which the court presently concerns itself. The court's conclusion that the government breached its original contracts through the abrogation of new plaintiffs' unfettered prepayment rights is maintained. Damages, if any, will be adjudicated later.

Three new plaintiffs [5] received financial assistance from the government for repairs and damages sustained during the January 1994 Southern California earthquake. Defendant claims that these agreements are substituted contracts and that these new plaintiffs agreed to bind themselves to defendant's affordability restrictions for the remaining physical life of the property. However, even defendant acknowledges that these new, allegedly substituted contracts did not prohibit prepayment but just required the continued applicability of the affordability restrictions even in the event of prepayment. The court finds that as these contracts, as defendant contends, do not address prepayment, they cannot be superseding contracts on that issue. Thus, these new plaintiffs' breach claims continue to stand. The effects of these contracts will be more appropriately addressed during the damages phase of the proceedings. These contracts may be found to mitigate or eliminate any alleged damages, but they do not disturb the liability determination for new plaintiffs.

In sum, the court looks to its Opinion in *Cienega I* for guidance in the resolution of the present dispute. The court finds here as it did in *Cienega I* that "these promises were made expressly to and for the benefit of the government, not third parties. In exchange, the government agreed to endorse and insure the mortgages ... and to allow plaintiffs to free themselves of HUD's regulatory strictures after the first 20 years." *Cienega I*, 33 Fed.Cl. at 210. By enacting ELIHPA and LIHPRHA, Congress breached the government's contracts with new plaintiffs. Accordingly, the court grants new plaintiffs' motion for partial summary judgment as to its claim of breach of contract. Also, the court orders a trial on the question of damages at which time any mitigating or aggra-

3. Argonaut Apartments, Casa San Pablo, Central Park Apartments, Drehmoor Apartments, Fairview Green Apartments, Genessee Park Apartments, Green Hotel, Hollywood Knickerbocker Apartments, Hollywood Plaza, Palo Alto Gardens, and Pico Plaza Apartments.

4. Argonaut Apartments, Beck Park, Central Park Apartments, Drehmoor Apartments, Genessee Park Apartments, Grace & Laughter Apartments, Green Hotel, Hollywood Knickerbocker Apartments, Palo Alto Gardens, and Placita Gardens Apartments.

5. Beck Park, Green Hotel, and Hollywood Knickerbocker Apartments.

vating effects of any subsequent agreements upon the issue of damages may be appropriately litigated.

## II. *Statutory violations by HUD*

In Count III of the first amended complaint, plaintiffs raise essentially the same issues on which this court granted summary judgment for defendant in *Cienega I*. In light of that previous ruling and its remarkable similarity to the circumstances of new plaintiffs and defendant, the court incorporates that portion of the opinion by reference, and accordingly, grants defendant's motion for partial summary judgment as to Count III.

### *CONCLUSION*

To summarize, trial is most likely necessary to determine damages with respect to new plaintiffs' breach of contract claim. New plaintiffs' claim for damages with respect to HUD's allegedly unlawful or improper administrative actions is hereby dismissed. By implication, trial is also necessary with respect to new plaintiffs' taking claim, an issue not presented in the RCFC 56(c) cross-motions here adjudicated. The parties shall file a joint status report proposing a schedule for further proceedings within 30 days.

**IT IS SO ORDERED.**