T.C. Memo. 1996-504


UNITED STATES TAX COURT


POISON CREEK RANCHES #1, LTD., POISON CREEK RANCHES #2, LTD.,
POISON CREEK RANCHES #3, LTD., POISON CREEK RANCHES #4, LTD.,
WALTER J. HOYT, III, TAX MATTERS PARTNER, ET AL.,[1] Petitioner
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 28394-89,   28395-89,   Filed November 7, 1996.
              28396-89,    7561-90.


Walter J. Hoyt III (tax matters partner), pro se.

<u>Margaret A. Martin</u>, for respondent.

---

[1]    The following cases are consolidated herewith:  Poison Creek
Ranches #1, Ltd., Poison Creek Ranches #2, Ltd., Poison Creek
Ranches #3, Ltd., Poison Creek Ranches #4, Ltd., Walter J. Hoyt
III, Tax Matters Partner, docket No. 28395-89; Poison Creek
Ranches #1, Ltd., Poison Creek Ranches #2, Ltd., Poison Creek
Ranches #3, Ltd., Poison Creek Ranches #4, Ltd., Walter J. Hoyt
III, Tax Matters Partner, docket No. 28396-89; Poison Creek
Ranches #1, Ltd., Poison Creek Ranches #2, Ltd., Poison Creek
Ranches #3, Ltd., Poison Creek Ranches #4, Ltd., Walter J. Hoyt
III, Tax Matters Partner, docket No. 7561-90.

MEMORANDUM FINDINGS OF FACT AND OPINION

DAWSON, Judge:  These consolidated cases were assigned to Special Trial Judge Stanley J. Goldberg pursuant to section 7443A(b)(4) and Rules 180, 181, and 183.[2]  The Court agrees with and adopts the opinion of the Special Trial Judge which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

GOLDBERG, Special Trial Judge:  Respondent issued a notice of final partnership administrative adjustments to each limited partnership involved in these consolidated cases, determining adjustments in the amounts and for the tax years set forth in the Appendix.

Walter, J. Hoyt III (petitioner), the tax matters partner for each limited partnership (partnerships) involved herein, filed a petition for redetermination of the partnership adjustments.  Most issues have been settled by stipulations so that the only remaining issues to be decided are:  (1) Each limited partnership's correct amount of Schedule F income, if any, and (2) the proper allocation of partnership items to the partners.  At trial, respondent filed a "Motion for Entry of

---

[2]   Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Decisions" and a proposed decision document in each case. Respondent's motion was recharacterized as a motion for summary judgment and filed as such. If we decide that the partnerships recognized Schedule F income, then the parties agree the amounts of Schedule F income reflected in the proposed decision documents are correct. Further, if we find that respondent's method for calculating the allocations is proper, then the parties agree that the allocations shown on the proposed decision documents are correct.

These consolidated cases involved adjustments to partnership income of Poison Creek Ranches #1 through #4 for taxable years ended December 31, 1983, 1984, 1985, and 1986. All the partnerships are limited partnerships formed to engage in the business of cattle breeding

The Court has previously considered the tax consequences of the Hoyt family cattle breeding operations in Bales v. Commissioner, T.C. Memo. 1989-568. The Bales case involved deficiencies in Federal income taxes of individual limited partners for the taxable years 1974 through 1980, who had invested in Florin Farms #1, #2, #3, #4, and #5, Durham Farms #1, #2, #3, and #4, and Washoe Ranches #1, #2, #3, #4, #5, and #6. As a result of our opinion in Bales on May 20, 1993, Walter J. Hoyt III, the general partner and tax matter partner, entered into a settlement agreement (the agreement) with respondent's

Sacramento, California, Appeals Office, setting forth the basis of settling all Hoyt cattle partnership cases for the taxable years 1980 through 1986.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received into evidence are incorporated by this reference. The parties have agreed that the testimony and transcripts of the proceedings in the cases at docket No. 8916-89, Washoe Ranches #1, Ltd., et al., and related cases, and docket No. 22003-89, Shorthorn Genetic Engineering 1982-1, Ltd., et al., and related cases, will be incorporated by this reference into the record in these cases.

The partnerships purchased the cattle used in their breeding operations from Hoyt & Sons Ranches (Ranches). In payment for the cattle purchased, the partnerships executed promissory notes payable to Ranches. Thereafter, the partners signed assumption of liability agreements, thereby assuming personal liability for these recourse partnership liabilities. Principal payments on the notes became due starting in the sixth year after the notes were signed.

During the taxable years in issue, the partnerships transferred cattle to Ranches in payment of principal and interest due on the notes. The parties introduced documentary evidence of each of these transactions: bills of sale from

Ranches to the partnerships; promissory notes from the partnerships to Ranches; and bills of sale from the partnerships to Ranches.

The partnerships reported income recognized on the transfer of cattle to Ranches in payment of principal and interest as gain under section 1231. Respondent adjusted this item to zero on the final partnership administrative adjustments issued to each partnership.

Pursuant to the agreement, the numbers of cattle subject to depreciation by the partnerships for the taxable years in issue were reduced. All cattle were subject to revised valuation as well. As a result, the amounts of principal due on the notes payable to Ranches for the cattle purchased were treated as reduced, and respondent recalculated the annual interest due based on these amounts according to the provisions of the agreement. This interest was to be computed on an original principal balance of $4,000, the settled cost basis of the breeding cattle per head, times the number of cattle in service during the first year of each partnership. The agreement provides that this new principal amount is the amount of partnership debt to be treated as personally assumed by the partners.

Schedule F Income

In part, the agreement provides:

The primary purpose of this memorandum is to memorialize the bases we reached for settling all cases involving Hoyt Cattle partnerships for the years 1980 through 1986.  It is our express intent to apply the provisions specified in this memorandum to determine the tax effects on partnership transactions and operations.

*     *     *     *     *     *     *

Satisfaction of obligations for interest, principal payments and management fees by transferring calves and culled cows will constitute ordinary income to the investor partnerships.  This convention is consistent with the Tax Court's decision in Bales v. Commissioner, which provides that
     -- calves are not section 1231(a) property; and

     -- although culled cattle are section 1231(a) property, the gain on which may be long term capital gain (depending on the holding period), depreciation allowed must be recaptured as ordinary income under the provisions of section 1245.

Principal payments equal to 10% of the face amount of the notes payable to Ranches will begin according to terms of the notes -- in the sixth year of the partnership * * *

The agreement includes a provision listing "the total number of cattle in service and subject to depreciation by the investor partnerships" for each of the taxable years 1980 through 1986.

The parties have stipulated:

     All payments on the promissory notes made by the partnerships to Hoyt & Sons Ranches beginning in the sixth year after their respective notes were executed were paid by transferring cattle with a zero basis, rather than cash. * * *

     The petitioners agree that all of the figures shown on Schedules (Joint Exhibits 36-AJ through 39-AM) [schedules of the interest and principal due for each of the years 1983 through 1986] are correct.  The petitioners agree that all of the interest and principal payments beginning in the sixth year of the notes were made by the transfers of cattle rather than cash. * * *

Petitioner testified that the following terminology is used in the cattle business. Cattle are classified as calves from birth to weaning; heifer calves being female calves. After weaning, females are referred to as heifers or yearling heifers. A heifer that bears a calf is thereafter a cow. Culled cows are cows which are removed from the breeding herd because they are suffering performance problems, such as not producing milk or not breeding. Cows may be culled due to age.

Allocations of Partnership Items

The agreement provides in part:

Each partner's profit and loss sharing percentage is determined annually by comparing the partner's capital account to the aggregate of the capital accounts of all partners in the partnership. This determination is made based on the total capital owned, not the total capital originally subscribed.

* * * * * * *

The amount of liabilities assumed personally by the partners during the first year of the partnership will be based on original subscription agreements, and will be provided by Walter J.

* * * * * * *

All partners who originally assumed personal liability for a portion of the partnership debt during the first year of the partnership -- whether they are now determined to be active or inactive partners -- will be assigned a share of the lower amount of recognized partnership debt described above. Each partner's share will be the exact same percentage as his/her share of the partnership debt originally assumed.

The agreement defines active partners as those who continue

to honor their obligations to Ranches and continue to participate in the partnership and inactive partners as those who have walked away from their note obligations and/or no longer participate in the partnership.

As an alternative, respondent made a settlement offer to the partners on an individual basis. The terms of the offer provided generally that a partner who accepted would be allowed a deduction for any cash paid to the "Hoyt Organization" in the year of payment. The partner would not be allowed any other deductions or credits nor be required to recognize any income related to the partnerships. The record does not indicate how many partners accepted this settlement offer (referred to as the out-of-pocket settlement).

Respondent's spreadsheets calculating the partners' interests in the partnerships have been stipulated and have been received into evidence. For the first year, respondent allocated a portion of the partnership debt, which consisted of the reduced amount of the notes to Ranches, to each of the partners who assumed personal liability. The allocation was based on the original percentages of partnership liabilities assumed as reflected in the partnerships' books and records. The resulting amounts represented each partner's beginning capital account balance. Each year respondent adjusted these balances for actual capital contributions made to the partnerships and for increases

and decreases in liabilities assumed. These adjusted balances were used to determine the proportionate share of partnership items to be allocated to each partner. The capital account balances were then adjusted to reflect the partnership items so allocated and these balances were carried over to the next year.

All of the partners included in respondent's proposed decision documents had personally assumed partnership liabilities as reflected in the partnerships' books and records and on the Federal income tax returns filed by the partnerships throughout the taxable years in issue. Furthermore, petitioner agrees that respondent's calculations are consistent with the books and records of the partnerships.

Several documents relating to one of the partnerships, Poison Creek Ranches #1, have also been stipulated to and received into evidence. The partnership was formed as a limited partnership under the laws of the State of Nevada in 1980.

The partnership agreement provides in pertinent part:

> 2. Each Limited Partner's interest in his share of the Partnership assets, profits and losses shall be the proportion which his capital contribution bears to the aggregate capital contributions of all Limited Partners. * * *

>       *    *    *    *    *    *    *

> (a) The right to expel any Limited Partner who may fail or refuse to pay into the capital of the Partnership the entire amount of his subscription within thirty (30) days after its due date, or who may attempt to participate in or interfere in any way with the management of the Partnership's affairs, is hereby expressly reserved to the General Partner in its

sole and absolute discretion.

OPINION

At trial, respondent filed a motion for summary judgment in these consolidated cases. Given the disposition of the issue on the merits as discussed below, we do not find it necessary to address respondent's motion for summary judgment, and it will be denied.

<u>Schedule F Income</u>

Under section 6224 a settlement agreement between respondent and a tax matters partner related to the determination of partnership items for any partnership taxable year is binding on the parties to the agreement with respect to the determination of partnership items for such partnership taxable year unless there is a showing of fraud, malfeasance, or misrepresentation of fact. Sec. 6224(c). Petitioner and respondent both assert that the agreement is clear and unambiguous, and neither party seeks to have it set aside. However, the parties do not agree on the proper interpretation and enforcement of the agreement.

Petitioner argues that the settlement memorandum was a complete integration of the agreement between petitioner and respondent and that respondent is precluded from relying on facts not contained therein. Petitioner argues that because the agreement limited the number of cattle subject to depreciation, the agreement failed to provide for the cattle necessary for the

partnerships to make the payments of principal and interest to Ranches by the transfer of cattle. Petitioner contends that the provision in the settlement agreement requiring payments of principal on the notes must be read to include petitioner's intention to have the partnerships make such payments by the transfer of registered shorthorn heifers. Petitioner further contends that the "cattle" transferred in payment of the notes, as stipulated, were not calves or culled cattle but registered shorthorn heifers. Petitioner argues that the Bales v. Commissioner, supra, decision and the agreement do not apply to the type of cattle transferred.

Respondent argues that the terms of the agreement are clear, limiting only the number of cattle subject to depreciation, not the total number of cattle. Because petitioner has stipulated that all principal and some interest payments on the notes were made by transferring cattle with a zero basis, respondent claims that these cattle would be nondepreciable or fully depreciated and not limited in number by the terms of the agreement. Respondent argues that the partnerships must recognize ordinary income in the amount of those payments by the terms of the agreement.

The settlement of tax cases is governed by general principles of contract law. We interpret the proper meaning of the terms of the agreement by looking at the language of the

agreement and the circumstances surrounding its execution. Robbins Tire Co. v. Commissioner, 52 T.C. 420, 435-436 (1969). Generally, extrinsic evidence will not be admitted to expand, vary, or explain the terms of a written agreement unless the agreement is ambiguous. Rink v. Commissioner, 100 T.C. 319, 325 (1993), affd. 47 F.3d 168 (6th Cir. 1995); Woods v. Commissioner, 92 T.C. 776, 780-781 (1989). Petitioner bears the burden of proving that his interpretation of any ambiguous contract language is correct. Rule 142(a); Rink v. Commissioner, supra at 326.

The settlement agreement provides that the partnerships must recognize ordinary income in the amount of any interest and principal payments made by the transfer of calves. In addition, the partnerships must recognize income on the transfer of any culled cattle in payment on the notes and such income will be ordinary in character to the extent it represents depreciation recapture. The stipulations provide that the partnerships transferred cattle with a zero basis in payment on the notes in amounts stipulated. We interpret this to mean that the partnerships transferred calves, culled cattle, or some combination thereof, to Ranches in payment of interest and principal due on the notes. Thus we find that the agreement applies to this transaction. Because the partnerships' bases in these cattle were zero, petitioner must recognize ordinary income

in a manner consistent with the decision in <u>Bales v.
Commissioner</u>, <u>supra</u>, as provided in the agreement and
stipulations.  We believe that a reasonable person with knowledge
of the facts and circumstances surrounding the agreement would
interpret the agreement and stipulations in this manner.  We hold
that the agreement provides for the inclusion of Schedule F
income in the amounts shown in respondent's proposed decision
documents.

Petitioner argues that this interpretation is inconsistent
with the other terms of the agreement.  An agreement should be
interpreted as a whole and any writings that are part of the same
transaction should be interpreted together.  2 Restatement,
Contracts 2d, sec. 202 (1981).  "An interpretation that gives a
reasonable meaning to all parts of the contract will be preferred
to one that leaves portions of the contract meaningless."  <u>Rink
v. Commissioner</u>, 47 F.3d 168, 171 (6th Cir. 1995), affg. 100 T.C.
319 (1993); 2 Restatement, Contracts 2d, sec. 202 (1981); 4
Williston on Contracts, sec. 618 (3d ed. 1961).

Petitioner argues that the agreement limits the total number
and class of cattle held by the partnerships.  The provision
establishing the number of cattle held by the partnerships
clearly applies, by its terms, only to depreciable cattle.
Petitioner argues that we should infer from this language that no
other cattle exist.  We find this reading to be inconsistent with

other provisions of the agreement.

For example, although not relevant to these cases, the agreement provides that cattle owned by the partnerships as of January 1, 1980, will be considered fully depreciated at the end of 1981. Thus the agreement provides that there are cattle that are no longer subject to depreciation.

In addition, as set out above, the agreement provides that payments made by the partnerships to Ranches by transfer of calves or culled cows will constitute ordinary income in a manner consistent with the decision in Bales v. Commissioner, T.C. Memo. 1989-568. In that case the Court stated that dispositions of breeding cattle, including culled cows, are taxed pursuant to section 1231(a) subject to the recapture provisions of section 1245. The Court further stated that calves that are used for payment on the notes are not held for breeding purposes and are not accorded section 1231 treatment. Bales v. Commissioner, supra. Such calves would not be subject to an allowance for depreciation and thus would not be subject to the limitation on depreciable cattle set forth above. Sec. 1.167(a)-6(b), Income Tax Regs. If petitioner's reading were accepted, this provision concerning calves would be rendered meaningless.

We note that the agreement is not completely clear in all of its terms. In part, the agreement provides: "For Federal income tax purposes, all the cattle are adult breeding cattle, each

having an original depreciable basis of $4,000." We do not believe this provision is clear and unambiguous because it could be read on its own to limit the type of cattle held by the partnerships. However, we interpret this paragraph as qualifying the one directly proceeding it which limits the number of cattle subject to depreciation for each year, and neither party has suggested a different interpretation. After considering these provisions and the agreement as a whole, we reject petitioner's argument that the provision limiting the number of depreciable cattle should be read to limit the total number of cattle held by the partnerships.

Even if we found the agreement ambiguous as to this provision, petitioner has offered no extrinsic evidence that supports petitioner's position. We find that the agreement limits only the number of cattle subject to depreciation, but does not limit the number of nondepreciable cattle owned by the partnerships.

Petitioner further argues that the portion of the agreement which provides that principal payments will begin in the sixth year of the partnership should be enforced by including that such payments are to be made by the transfer of registered shorthorn heifers. The language of the agreement is silent as to the method of payment.

Petitioner's proffered evidence, when considered in light of

general contract principles, does not convince us that his interpretation is correct. When the Court asked petitioner whether he assumed or intended that the provision meant that payment would be made by the transfer of registered shorthorn heifers, he responded "I wouldn't characterize it that way". He testified that he did not designate, in the provision of the agreement, the class of cattle with which he intended to make payment in the provision because he was focusing on trying to draft a document for the basis of settlement. We find that, although the agreement does not provide a specific method of payment on the notes, the parties have stipulated that the payments were made by the transfer of cattle.

Ordinarily, a stipulation of fact is binding on the parties, and the Court is constrained to enforce it. Rule 91. The Court will not permit a party to a stipulation to qualify, change, or contradict the stipulation except where justice requires. Rule 91(e). The interpretation of a stipulation is determined primarily by ascertaining the intent of the parties by applying rules of contract law. Stamos v. Commissioner, 87 T.C. 1451, 1455 (1986).

As we understand petitioner's argument, petitioner claims that the "cattle" transferred in payment on the notes as stipulated were not culled cows or calves but were registered shorthorn heifers, and, therefore, not covered by the agreement.

- 17 -

Petitioner argues that there is no gain to be recognized from the transfers because the Bales v. Commissioner, supra, decision does not apply to this class of cattle. We disagree.

The language of the Bales v. Commissioner, supra, decision is not as narrow as petitioner argues. The Court in Bales found the following facts: "As for culled cattle used to pay principal on the notes, we do have some indication that the partnerships sold culled cows to Hoyt & Sons. These are cattle which did not fit the program. Many were heifers which did not become pregnant." Bales v. Commissioner, T.C. Memo. 1989-568. Thus the terms "culled cattle" and "culled cows" as used in Bales included heifers.

Moreover, petitioner has stipulated that the cattle transferred had a zero basis. Thus the transfers result in ordinary income to the partnerships regardless of whether the cattle are heifers or culled cows and calves. A stipulation may be set aside where it is clearly contrary to the facts disclosed on the record. Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195 (1989). The evidence offered by petitioner consists of bills of sale from the partnerships to the Ranches corresponding to the cattle that petitioner claims were transferred in payment on the notes. The bills refer to the cattle as "registered shorthorn heifers." The bills of sale do not indicate the partnerships' basis in any of the cattle. The facts on the

record do not show that the partnerships made payment on the notes with cattle other than those with a zero basis as stipulated. Accordingly, the partnerships must recognize ordinary income in the amounts of the payments of interest and principal on the notes.

Petitioner's argument concerning the terms of the agreement and stipulation is not entirely clear, and we will briefly address the alternate argument we believe petitioner may be attempting to make. The argument can be summarized as follows: The agreement sets out the number of cattle subject to depreciation on an annual basis; as stated in the petition, the partnerships sold registered shorthorn heifers which had been held for breeding purposes for over 24 months in payment of the notes; these cattle would be depreciable; because the number of cattle subject to depreciation does not decrease in correlation to the cattle transferred in payment on the notes, the agreement does not provide the partnerships with sufficient cattle to make such payments. Therefore, the payments could not have been made under the binding terms of the agreement.

We are not persuaded by this argument. Even if the cattle transferred were depreciable, registered shorthorn heifers, petitioner has stipulated that the cattle had zero basis, and as explained above, we will not set aside this stipulation. Therefore, the cattle would be fully depreciated and outside of

the provision limiting the number of cattle held subject to depreciation.

In the alternative, petitioner argues that because respondent calculated lower interest payable by the partnerships for the years in issue consistent with the agreement, the partnerships paid cash to Ranches in excess of the amounts due in some of the years. This cash, petitioner asserts, should be applied to any future principal and interest due on the notes payable to Ranches before the partnerships recognize any ordinary income on the transfer of cattle in payment.

Respondent argues that the stipulation clearly negates any claim that the partnerships made payments on the notes with cash and that petitioner is bound by the stipulation.

The Court will hold the parties bound by a stipulation unless justice requires otherwise. Rule 91(e). The Court may modify or set aside a stipulation that is clearly contrary to the facts revealed on the record. Cal-Maine Foods v. Commissioner, supra.

Petitioner attached schedules entitled "Partnerships Cash Reconciliation" to petitioner's posttrial brief for each of the years 1980 through 1986. This exhibit is not considered to be evidence. Rule 143(b). Petitioner also argues that the stipulations entered in two other cases are evidence in support of his position. Stipulations have effect in the cases in which

they are entered only and are not binding for any other purpose. Rule 91(e). Therefore, the stipulations from the other cases are not evidence in these cases.

Petitioner has offered no other evidence to show that any cash was paid to Ranches. The only evidence introduced by petitioner is the bills of sale detailing the number of cattle transferred as payment on the notes. Moreover, petitioner stipulated that the payments at issue were made by transferring cattle, not cash. This stipulation is not clearly contrary to the facts disclosed on the record. Therefore, we find that the partnerships made interest and principal payments beginning in the sixth year of the notes payable by transferring cattle. The partnerships must recognize ordinary income on the transfer of cattle in the amounts stipulated.

Allocations of Partnership Items

When a petition for readjustment of partnership items has been filed properly, this Court has jurisdiction to decide all of the partnership items of the partnership and the proper allocation of these items to the partners for the partnership taxable year at issue. Sec. 6226(f). Partnership items are those items required to be taken into account for the partnership's taxable year under subtitle A which are to the extent provided by the regulations "more appropriately determined at the partnership level than at the partner level." Sec.

6231(a)(3).  The regulations provide that such items include:

     (1) The partnership aggregate and each partner's share of each of the following:
        (i) Items of income, gain, loss, deduction, or credit of the partnership;

      *     *     *     *     *     *     *

     (v) Partnership liabilities (including determinations with respect to the amount of liabilities, whether liabilities are nonrecourse, and changes from the preceding taxable year); and

      *     *     *     *     *     *     *

     (4) Items relating to the following transactions, to the extent that a determination of such items can be made from determinations that the partnership is required to make with respect to an amount, the character of an amount, or the percentage interest of a partner in the partnership, for purposes of the partnership books and records or for purposes of * * * furnishing information to a partner:
        (i) Contributions to the partnership;
        (ii) Distributions from the partnership; and
        (iii) Transactions to which section 707(a) applies (including the application of section 707(b)).

Sec. 301.6231(a)(3)-1(a), Proced. & Admin. Regs.

All partners who held an interest in the partnership for the taxable year at issue generally will be treated as parties to a partnership action.  Sec. 6226(c).  However, a partner is not a party if he or she does not have an interest in the outcome of the proceeding because such partner's partnership items have become nonpartnership items pursuant to subsection (b) of section 6231.  Sec. 6226(d).  A partner's partnership items will be treated as nonpartnership items as of the date on which the partner enters into a settlement agreement with the respondent

with respect to such items.  Sec. 6231(b)(1)(C).  The classification of items as partnership or nonpartnership items is significant because the audit and litigation procedures provided in sections 6221 through 6230 apply to partnership items. Nonpartnership items are subject to the rules for judicial and administrative resolution of the partner's tax liability and cannot be the subject of a partnership proceeding.  See, e.g., Maxwell v. Commissioner, 87 T.C. 783, 788-789 (1986).

Petitioner has made various arguments based on an assumption that respondent included partners who have accepted the out-of-pocket settlement in her calculations on which the proposed decision documents are based.  Petitioner bears the burden of proof in these cases.  Rule 142.  We begin by noting that there is no evidence in the record concerning partners who have accepted the out-of-pocket settlement.  Therefore, we have no indication that any such partners were included in respondent's calculations.  We will, however, further address petitioner's arguments.

Petitioner argues that the partnership income, losses, credits, and liabilities calculated pursuant to the agreement should be allocated to a limited group of partners.  Petitioner contends that any partners who have accepted the out-of-pocket settlement offer from respondent are not parties to this proceeding pursuant to section 6226.  Therefore, petitioner

argues, the Court is prohibited from allocating partnership items to those partners because we do not have jurisdiction to do so. Petitioner also argues that pursuant to section 6231, the partnership items of the partners who have accepted the out-of-pocket settlement have been converted to nonpartnership items. As a result, petitioner argues that these partners have no partnership interest.

Respondent argues that the Court has jurisdiction to determine the allocation of items at issue in these cases because the items are partnership items. Respondent contends that in order to determine the allocations to be made to the partners who have not settled on an individual basis, it is necessary for the Court to consider the capital accounts of all of the partners.

Respondent argues that the TEFRA provisions are procedural, and affect only the type of proceeding which may be brought, but do not alter the substantive law of partnerships. Thus, respondent argues, the provisions do not have the effect of removing partners from the partnership.

The items at issue fall within the definition of partnership items. The determination of the allocation of partnership items to the parties to this action requires that we consider the partnership aggregate of each item including partnership capital. A partner's allocable interest in each item is determined based on the share of total partnership capital contributed by the

partner.

The effect of a partner's accepting the out-of-pocket settlement is that the partner and respondent have agreed on the treatment of the partner's share of partnership items for Federal tax purposes.  Under sections 6226 and 6231, such partner is not a party to this partnership action and is not bound by our determinations. However, the partner is still a party to the partnership agreement and retains his interest as partner in the partnership.  Thus, the allocations of partnership items must be computed by including the interests of all partners, including any who have accepted the out-of-pocket settlement.

Petitioner also contends that by the terms of the partnership agreement, the tax matters partner has the authority to accept the out-of-pocket settlement on behalf of individual partners, that he has exercised such authority with respect to certain partners, and that these partners are no longer parties to this action.  Because we have held that the status of the partners with respect to these cases does not affect our jurisdiction to determine the allocation of partnership items above, we find no merit in this argument.  In addition, the partnership agreement for Poison Creek Ranches #1 does not contain any provisions with respect to the tax matters partner, his rights, or his duties.

In the alternative, petitioner argues that the proper

interpretation of the agreement supports his contention that the partnership items should be allocated to a limited number of partners.

First, petitioner asserts, on brief, that the tax matters partner believed that pursuant to the Code provisions, partners who settled on an individual basis should be excluded from allocations to be determined under the agreement because such partners are no longer parties to this action.

Respondent argues that even assuming that the tax matters partner believed the calculations under the agreement would be made by applying its provisions only to the partners who are parties to this action, such belief is a mistake of law, and thus it does not preclude enforcement of the agreement.

Assertions made in briefs do not constitute evidence. Rule 143(b). There is no evidence on the record to support petitioner's assertion as to the belief of the tax matters partner at the time the agreement was made. Further, we agree with respondent that the tax matters partner's asserted belief is mistaken, and, whether the mistake is of fact or law, it is not grounds for rescinding an agreement under section 6224. Korff v. Commissioner, T.C. Memo. 1993-33. Therefore, the agreement is enforceable.

In the alternative, petitioner argues that by its terms the agreement does not apply to partners who have settled with the

respondent on an individual basis. Petitioner relies on the following language: "The primary purpose of this memorandum is to memorialize the bases we reached for settling all cases involving Hoyt partnerships for the years 1980 through 1986." Petitioner argues that the agreement therefore has no relevance for partners who are not parties to this action.

Again, we note, that there is no evidence in the record concerning the extent to which respondent's calculations include partners who have accepted the out-of-pocket settlement. In any event, we find that the language of the agreement providing for the calculation of the allocations of partnership liabilities and other items to the partners is clear. Each section refers to "the partners" or "all partners". Therefore, we find that inclusion of all partners in the calculations is appropriate.

In the alternative, petitioner argues that the terms of the partnership agreements control these allocations and that respondent's calculations are inconsistent with the requirements of the partnership agreements. Petitioner contends that the provisions of the partnership agreements require that partnership items be reallocated in accordance with the partner's real interests in the partnership. Petitioner argues that the allocations of partnership items are to be made pursuant to the partnership agreements under section 704(a). Petitioner asserts that certain partners defaulted on the notes to Ranches.

Petitioner contends that under the terms of the partnership agreement the interests of these partners have been terminated. Petitioner also contends that under the partnership agreement the partners are to be treated as having never assumed these obligations, and, therefore, they should not be allocated any share of the partnership liabilities under the agreement.

Petitioner's contentions are not supported by the evidence in the record. Petitioner has not produced any evidence that any partners defaulted on the notes.

Even if we were to find that the partners defaulted on the notes, the partnership agreement for Poison Creek Ranches #1 does not support petitioner's argument. The partnership agreement does not provide for the adjustment or reallocation of partnership items to the limited partners. In addition, the partnership agreement provides that a limited partner may be expelled for defaulting on his or her subscribed contribution, not for defaulting on partnership obligations. Nor does the partnership agreement provide that an expulsion is retroactive to the beginning of the partnership.

Moreover, the settlement agreement expressly provides for the inclusion of partners who later default on their note obligations to Ranches (inactive partners) in the original allocations of the partnership debt. The agreement is binding on the parties. Sec. 6224.

Petitioner also makes the following secondary arguments: (1) Various partners' interests have been terminated due to the partners' actions or inactions; (2) a large number of partners defaulted on the notes to Ranches in 1987, and their cattle have been repossessed; therefore, these partners should not be allocated any partnership debt; and (3) certain partners terminated their interests in 1994 by letters alleging that the partnerships were terminated shortly after inception.

Respondent objected to any evidence of these purported actions or inactions as irrelevant because they were subsequent to the taxable years at issue.

Evidence is relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. Petitioner proffered evidence of various livestock exhibitions, sales and programs, letter writing campaigns from 1992 through 1994, and a management agreement between Shorthorn Genetic Engineering 1983 #3 and W.J. Hoyt Sons Management Co., Ltd., for years beginning with 1993, as well as termination of interest letters from partners written in 1994. Petitioner has provided no explanation of the relevance of these documents to the taxable years at issue. The evidence does not tend to show that any partners withdrew from or had their interests in any of the partnerships terminated during the

taxable years at issue.  Respondent's objection is sustained.

The only evidence in the record that any cattle were repossessed is petitioner's own general testimony that cattle were repossessed.  Even if we believed that the cattle were repossessed by Ranches, the repossession occurred after the taxable years in issue and is not relevant to these cases.

To reflect the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered in each case</u>.

APPENDIX

| Docket No. | Partnership | Taxable Year Ending | Investment Tax Credit | Adjustments | |
|---|---|---|---|---|---|
| | | | | Ordinary Income | Separately Stated Partnership Items |
| 28394-89 | Poison Creek Ranches #1, LTD. | 12/31/83 | $0 | $354,738 | $21,250 |
| | Poison Creek Ranches #2, LTD. | 12/31/83 | 0 | 334,265 | 12,950 |
| | Poison Creek Ranches #3, LTD. | 12/31/83 | 0 | 360,477 | 12,900 |
| | Poison Creek Ranches #4, LTD. | 12/31/83 | 0 | 353,515 | 19,275 |
| 28395-89 | Poison Creek Ranches #1, LTD. | 12/31/84 | 0 | 384,958 | (99,645) |
| | Poison Creek Ranches #2, LTD. | 12/31/84 | 0 | 430,773 | (51,500) |
| | Poison Creek Ranches #3, LTD. | 12/31/84 | 0 | 397,430 | (16,993) |
| | Poison Creek Ranches #4, LTD. | 12/31/84 | 0 | 433,738 | (21,900) |
| 28396-89 | Poison Creek Ranches #1, LTD. | 12/31/85 | 11,895 | 242,256 | 0 |
| | Poison Creek Ranches #2, LTD. | 12/31/85 | 11,896 | 210,763 | 22,000 |
| | Poison Creek Ranches #3, LTD. | 12/31/85 | 11,895 | 190,511 | 24,000 |
| | Poison Creek Ranches #4, LTD. | 12/31/85 | 11,896 | 344,461 | 24,000 |
| 7561-90 | Poison Creek Ranches #1, LTD. | 12/31/86 | 0 | 362,534 | (230,498) |
| | Poison Creek Ranches #2, LTD. | 12/31/86 | 0 | 320,864 | (291,693) |
| | Poison Creek Ranches #3, LTD. | 12/31/86 | 0 | 332,559 | (271,656) |
| | Poison Creek Ranches #4, LTD. | 12/31/86 | 0 | 432,785 | (356,201) |