**LURLINE GARDENS LIMITED HOUSING PARTNERSHIP, a California Limited Partnership, and Phoenix Gardens Limited Housing Partnership, a California Limited Partnership, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 95–607C.**

United States Court of Federal Claims.

Feb. 28, 1997.

*Order*

WEINSTEIN, Judge.

Defendant has moved for partial summary judgment on count one of the complaint, for breach of contract. (The other count is for a Fifth Amendment taking.)[1] The motion is granted.

*Background*

Plaintiffs Lurline Gardens Limited Housing Partnership ("Lurline") and Phoenix Gardens Limited Housing Partnership ("Phoenix") were organized in Southern California for the purpose of participating as housing developers in a housing program of the Federal Housing Administration (FHA) (within the Department of Housing and Urban Development (HUD)),[2] pursuant to section 236 of the National Housing Act, 12 U.S.C. §§ 1701 *et seq.* (1970) (Act). Ehrlich[3] Dec. ¶ 3. The purpose of this housing program was to encourage private developers to develop low- and moderate-income housing, by providing an interest subsidy for the developers. 12 U.S.C. § 1715z–1 (1970).

Upon application, each partnership received substantially identical FHA forms, dated July 22, 1971 and December 19, 1973, respectively, labeled "Commitment for Insurance of Advances,"[4] Def.App. 1–4, 25–28.

---

1. A related case concerning earthquake repairs was brought by Lurline Gardens on the same date. *Lurline Gardens Ltd. Housing Partnership v. United States*, No. 95–606C (Fed.Cl. filed Sept. 8, 1995).

2. In 1965, the functions of the FHA were transferred to HUD. *See* 42 U.S.C. § 3534(a) (1988).

3. Richard Ehrlich is the general partner of each partnership. Ehrlich Dec. ¶ 1.

4. Because the forms are dated September 1968 and titled "Commitment for Insurance of Advances," and the prior section references are crossed out mechanically and a new paragraph 14 providing for interest reduction payments was added, *see* Def.App. 1–4, 25–28, it appears that

Each commitment informed the prospective mortgagee (Weyerhauser Mortgage Company) and plaintiffs, as "proposed mortgagors," that, "subject to compliance with the requirements of the Regulations" under the Act, *see* 24 C.F.R. Part 236 (1971, 1973), and the terms stated in the commitment, the Commissioner would endorse for insurance, pursuant to § 1715z–1 of the Act, a forty-year deed of trust note ("note"), to be secured by a deed of trust ("deed") (collectively, "trust instruments" or "mortgage notes") on certain real estate. Def.App. 1–2, 25–26.

The commitments set out the terms (*e.g.*, the amount, interest rate, and number of payments on the mortgage notes; and the requirement to construct apartment complexes (a 196–unit complex for Lurline, and a 75–unit complex for Phoenix, Ehrlich Dec. ¶ 2) in accordance with certain drawings and specifications on identified properties). Def.App. 1–2, 15–26. The payments were to total $97,390.80 (Phoenix) and $241,240.44 (Lurline) per year. Def.App. 2, 25. The Commissioner agreed to make annual interest reduction payments of $64,245 (Phoenix) and $189,136 (Lurline). Def.App. 4, 28.

Each commitment also provided for filing of documents necessary to execute the mortgage notes and "a Regulatory Agreement or other instrument to permit the Commissioner's regulation of the Mortgagor as to rents, charges, and methods of operation." Def. App. 3, 27. It also stated that "[a]ll certificates, documents and agreements called for by this commitment shall be on forms approved or prescribed by the Commissioner," Def.App. 3, 27, and that the trust instruments, in final form, were due at least fifteen days prior to the "initial insurance endorsement" of the notes. Def.App. 2, 26. The commitments did not reference any conditions allowing prepayment of the mortgage notes.

Lurline and Phoenix each (along with the mortgage company) executed substantially identical notes and deeds on preprinted FHA forms, on August 1, 1971 and December 21, 1973, respectively. Def.App. 5–13, 29–37.

Rider "A" to each note provided that the note could not be prepaid either in whole or in part without the Commissioner's prior written approval, except: (1) in connection with a unit's sale to a lower income, elderly, or handicapped person; and (2) where "the maker is a limited distribution mortgagor which is not receiving payments from the Commissioner under a rent supplement contract pursuant to Section 101 of [the Act], and the prepayment occurs after the expiration of twenty years from the date of final endorsement," or as a result of certain sales to a cooperative or nonprofit association. Def.App. 8, 32. Both Lurline and Phoenix were and are limited distribution mortgagors. Ehrlich Dec. ¶ 9. Phoenix received rent supplement payments, but these were terminated within twenty years of the final endorsement.[5] Def.App. 22, 22A.

In the event of prepayment, a prepayment penalty for the holder's benefit is provided by Rider "A." Upon prepayment of more than fifteen percent of the original principal amount, the holder is to be paid up to three percent of the amount of such excess. Def. App. 8, 32. Lesser prepayments were not subject to penalties. App. 5, 29. If plaintiffs violated the agreement, and did not cure the violation within thirty days of notice, the Commissioner could take possession of and operate the project, or ask the mortgagee (Weyerhauser) to declare a default and assign the trust instruments to the Commissioner. Def.App. 17, 41.

The deeds provided that the Regulatory Agreement (RA) was incorporated and made part of the deed, and that, upon default under the RA, the beneficiary (Weyerhauser)

---

the forms were intended for the prior programs under other sections of the Act in which the Commissioner insured below-market mortgage loans by the mortgagors, rather than the section 236 program enacted in 1968, in which plaintiffs were participating, under which market rates were charged, but interest reduction payments were made by HUD, so that plaintiffs effectively paid only one percent interest.

**5.** The Rent Supplement Contract was terminated on October 1, 1982, Def.App. 24A, and therefore provides no independent basis for barring Phoenix's prepayment pursuant to the mortgage notes, as defendant concedes.

had the option to declare the entire indebtedness to be due and payable. Def.App. 10, 34.

Exhibit A to the deeds stated that the Trustor's (plaintiffs) covenant to pay principal and interest was "for the purpose of establishing and continuing the existence of the indebtedness," and that, while the holder could take action to satisfy the indebtedness in the event of default, "no action so taken [would] impair any obligation of the Trustor under the Building Loan Agreement and the [RA]." Def.App. 13, 37. The Commissioner did not sign either the deeds or the notes.

On the same dates that the deeds and notes were signed, plaintiffs and the Commissioner executed virtually identical RAs under section 236 of the Act. These were not signed by the mortgagee Weyerhauser. In consideration of the Commissioner's insurance endorsement of the mortgage notes, "and in order to comply with the requirements of Section 236 of [the Act], and the Regulations ... thereto," plaintiffs agreed in the RAs to limit: the amount of rent, the tenants' income levels, and the owner's rate of return (six percent), among other restrictions ("affordability restrictions"). Def.App. 14–15, 38–39. The plaintiffs agreed, on behalf of themselves, and their successors, heirs, and assigns, that the RAs were to remain in effect "so long as the contract of insurance continue[d] in effect, and during such further time as the Commissioner shall be the owner, holder, or reinsurer of the mortgage, or obligated to reinsure the mortgage." Def.App. 18, 42. They also agreed not to convey, transfer, or encumber any of the mortgaged property or permit its conveyance, transfer, or encumbrance. Def.App. 15, 39. The RAs contained no provisions concerning prepayment of the mortgage note.

The Commissioner initially endorsed the Lurline mortgage note on August 11, 1971, Def.App. 30, and the Phoenix mortgage note on December 28, 1973, Def.App. 7. These dates were deemed to establish HUD's insurance of the mortgages and the mortgage company's agreement to be bound by the section 236 regulations. See 24 C.F.R. § 236.252 (1971, 1973) (incorporating by reference 24 C.F.R. § 207.254 (1971, 1973)).

However, the Commissioner's final endorsement of the deeds and mortgage notes (when all advances had been made and all terms and conditions of the commitment had been complied with) did not occur until February 14, 1973 (Lurline) and sometime (the date in the record is not legible) in 1974 (Phoenix). Def.App. 7, 30; see 24 C.F.R. § 236.252 (1971, 1973).

The regulations then in effect, in a provision virtually identical to section 2 of Rider "A" to the note, allowed prepayment without the Commissioner's consent "after ... 20 years from the date of final insurance endorsement of the mortgage, provided the mortgagor is not receiving payments from the Commissioner under a rent supplement contract executed pursuant to the provisions of §§ [21]5.1 et seq. of this title." 24 C.F.R. § 236.30(a)(1)(i) (1971, 1973).

The regulations also provided that they could be amended by the Commissioner at any time, in whole or in part. While "such amendment shall not adversely affect the interests of a mortgagee or lender under the contract of insurance on any mortgage or loan already insured ...," 24 C.F.R. § 236.249 (1971, 1973), no such protection was given to a *mortgagor*, such as plaintiffs. (Such protection, nonetheless, is what plaintiffs seek in this case.)

In 1988, Congress, concerned about the prospect of widespread post-twenty-year prepayments restricting the supply of low-income housing, S.Rep. No. 316, 101st Cong.2d Sess. 105, *reprinted* 1990 U.S.C.C.A.N. 5763, 5867, placed a two-year moratorium on section 236 mortgage prepayment. Emergency Low Income Housing Preservation Act of 1987 (1988 Act), Pub.L. 101–242, § 221(b), 101 Stat. 1879, 1877 (codified at 12 U.S.C. § 1715*l* note). The 1988 Act allowed prepayment only if it would neither materially increase current tenant's economic hardship nor leave an inadequate supply of comparable housing for lower-income and minority families in the community. *Id.*, § 225, 101 Stat. at 1880. This restriction would apply to plaintiffs, since no comparable housing is available where their projects are located. Ehrlich Dec. ¶ 12.

The Low Income Housing Preservation and Resident Homeownership Act of 1990 (1990 Act), 12 U.S.C. § 4101 *et seq.* effectively made the moratorium permanent unless (1) the government failed to provide financial incentives to extend use restrictions, (2) the owner sold the project to third parties at a price approved by HUD, or (3) an owner seeking to sell did not, within fifteen months, receive a fair market value offer to purchase. 12 U.S.C. §§ 4109–11. They allege that they submitted requests for incentives (an eight percent return based on the owners' equity in the project), Comp. ¶ 23, but do not explain what happened to their requests. Plaintiffs do not state whether they sought to sell the properties under the 1990 Act.

Plaintiffs allege that they intended to prepay, and, but for the new statutory prohibition, would have prepaid, their notes after twenty years (in 1993 or 1994).[6] (They apparently never offered prepayment to the mortgagee Weyerhauser at that time.) They claim damages of not less than two million dollars and continuing damages arising from not being allowed to avoid the affordability restrictions in the RAs.

On May 1, 1995, HUD's Office of the General Counsel ruled on the eligibility of an owner of a section 221(d)(3) project owner to prepay the mortgage in the face of a prepayment prohibition in the mortgage note. It concluded that the prohibition in the note did not override the directly conflicting regulation, *see* 24 C.F.R. § 221.524(a), which is nearly identical to the regulation in effect in 1971 through 1974 (permitting prepayment after twenty years without the Commissioner's prior consent) that is replicated in Rider "A" to the notes. Def.App. 45–48. This ruling was consistent with HUD's previous position, announced by the Commissioner fours years earlier, on May 2, 1991, *see* 56 Fed.Reg. 20262, 20267 (1991), that, in the event of a conflict between the note and HUD's regulations regarding prepayment, the regulations supersede contrary language in the note, whether this results in permitting or prohibiting the prepayment. Def. App. 47–48.

## Discussion

Count one of the complaint in case number 95–607C, as to which defendant has moved for summary judgment, alleges that defendant had a contractual duty to permit plaintiffs to prepay the notes after twenty years, and seeks damages allegedly caused by the breach of this purported obligation. Summary judgment is appropriate when there is no genuine issue as to a fact that is material to establishing the plaintiff's claim, and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Any doubt regarding the existence of a material factual issue must be resolved in favor of the plaintiff. *Tillotson, Ltd. v. Walbro Corp.,* 831 F.2d 1033, 1039 (Fed.Cir.1987). The issues here are largely ones of regulatory and contract interpretation, which are determined by the court as a matter of law. *Perry v. Martin Marietta Corp.,* 47 F.3d 1134, 1137 (Fed.Cir.1995); *Interwest Constr. v. Brown,* 29 F.3d 611, 614 (Fed.Cir.1994).

Clearly, this case is not about merely the breach of defendant's supposed contractual obligation to allow "prepayment" of the mortgage notes (and thus discharge of the plaintiffs' obligations under the deeds and notes to Weyerhauser), there being no allegation that Weyerhauser objected to prepayment under those terms. The real issue, of course, is whether plaintiffs can terminate their responsibilities under the RA, which contained no prepayment right, and under the regulations, as amended, and thus avoid HUD's affordability and other restrictions on plaintiffs' use of the housing project.

■ Defendant's position is straightforward: the only contracts arguably giving

---

6. Whether Phoenix intended at the outset to benefit from the twenty-year prepayment provision (*i.e.,* relied upon it) appears open to question, since, as a recipient of rent supplement payments until October 1, 1982, it would not have been entitled to do so. However, the court need not reach and does not decide this question, assuming plaintiffs' well-founded factual allegations to be true for purposes of deciding this motion.

plaintiffs a right to prepay the mortgage notes were the mortgage notes themselves,[7] and, because the Commissioner was not a party, defendant cannot be held liable for breach of any obligation contained in the notes. That is, there is no privity of contract between plaintiffs and the government. Defendant points out that there is no allegation that HUD breached its commitment to insure the loans, which is the only purpose for which HUD endorsed the mortgage notes. *See* 24 C.F.R. § 207.254(a) (1971, 1973).

Another judge of this court rejected defendant's arguments, reasoning that the mortgage notes and regulatory agreements "must be read together in order to determine the full intentions of the parties when they initially entered into their relationship," relying on *Restatement (Second) of Contracts* § 202 (providing that "all writings that are part of the same transaction are interpreted together"). *Cienega Gardens v. United States,* 33 Fed.Cl. 196, 210 (1995); *see also Cienega Gardens v. United States,* 37 Fed.Cl. 79, 82–83 (1996); *Anaheim Gardens v. United States,* 33 Fed.Cl. 773, 776 n. 1 (1995).

This court is not persuaded by *Cienega Gardens* on the question of whether the notes and deeds bind the government, because the court does not find any of these instruments alone, or together, to be ambiguous. Thus, evidence regarding the intent of the parties at the time they entered into these agreements as evidenced by other contemporaneous agreements is both parol evidence and not relevant. *Rink v. Commissioner,* 47 F.3d 168, 171–72 (6th Cir.1995).

The principle that writings are to be interpreted together merely ensures that the transaction as a whole be properly and consistently understood, not that all the obligations of a party to one writing be ascribed to all the parties to every other writing. Nothing in defendant's reading of the contracts creates any inconsistency between the individual writings or makes the transaction as a whole internally inconsistent.[8] That is, defendant's interpretation leaves no portion meaningless. *See* 4 *Williston on Contracts* § 618 (3rd ed. 1961); *cf. Poison Creek Ranches # 1, Ltd. v. Commissioner,* 72 T.C.M. (CCH) 1218, 1996 WL 646764 (Tax Ct. Nov. 7, 1996) (citing *Rink,* 47 F.3d at 171)

7. Plaintiffs mistakenly argue that the prepayment provision in the regulations was incorporated by reference into each RA, specifically, by the statement in the preamble that the agreement was entered into "in order to comply with the requirements of Section 236 of the National Housing Act, as amended, *and the Regulations adopted by the Commissioner pursuant thereto.*" Def.App. 14, 38 (emphasis added). A recital that an agreement is governed by or executed pursuant to a set of regulations does not incorporate those regulations into the agreement. *Smithson v. United States,* 847 F.2d 791, 793 (Fed.Cir.1988). Moreover, the regulatory agreements, in section 10, expressly incorporate some of the regulations, Def.App. 17, 41; reading the preambles to incorporate all of the regulations would render the provision in section 10 redundant. *See Quaker State Oil Refining Corp. v. United States,* 994 F.2d 824, 828 (Fed.Cir.1993).

The cases from other courts cited by plaintiffs as holding that the RA guaranteed the right to prepay, *Orrego v. 833 W. Buena Joint Venture,* 943 F.2d 730, 731–32 (7th Cir.1991), and *Thetford Props. IV Ltd. Partnership v. United States Dep't of HUD,* 907 F.2d 445, 446 (4th Cir.1990), do not bind this court, for the statements were imprecise, and dicta, because those cases involved no question of privity of contract.

Plaintiff's assumption that the prepayment regulation was incorporated into each insurance

contract between the Commissioner and the mortgage company also is incorrect. The insurance contract incorporates subpart B of the section 236 regulations, *see* 24 C.F.R. § 236.252 (1971, 1973) (incorporating 24 C.F.R. § 207.254 (1971, 1973)), but the prepayment regulation, 24 C.F.R. § 236.30 (1971, 1973), is contained in subpart A, which is not incorporated. Thus, plaintiffs' argument that they are third-party beneficiaries of the insurance contracts, even if correct (which the court does not decide), would not establish liability for a breach of a regulation not incorporated therein.

8. It would be entirely reasonable to view the inclusion of the current mortgage prepayment regulations in the notes merely as notice to the mortgagee Weyerhauser, not as giving plaintiffs any right against Weyerhauser (never mind against a non-party, such as FHA). In any event, a prepayment prohibition in trust instruments generally would be for the lender's (mortgagee's) benefit, and thus ordinarily enforceable or waivable by the mortgagee. Further, under the prior section 221 program (the documents which appear to have continued to be used in this section 236 program), *see supra* note 4, in which the mortgagee agreed to below-market rates and the government insured payment, the mortgagee's interest in knowing about prepayment possibilities might be heightened.

("[I]f the essential terms of an agreement are deemed unambiguous, a court will not look beyond the four corners of the document to determine the parties' intent. An interpretation that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions of the contract meaningless.") (citation omitted).

■ In sum, there simply is no contract between the plaintiffs and the Commissioner in which the Commissioner agreed to permit prepayment after twenty years, and the court shall not infer such a contract from agreements that easily could have been, but were not, written to include such an obligation. That the RA and mortgage note should be read together or consistently as part of a concurrent transaction does not mean that an obligation in the latter should be incorporated into the former. *Martuccio v. Commissioner*, 30 F.3d 743, 751 (6th Cir. 1994) ("where 'the agreements involved formally different parties, ... the conclusion of separateness becomes all but inescapable' ") (quoting *Rudman v. Cowles Communications, Inc.*, 30 N.Y.2d 1, 330 N.Y.S.2d 33, 42, 280 N.E.2d 867, 873–74 (N.Y.1972)); *Fred S. James & Co. v. Hoffmann*, 24 Mass.App.Ct. 160, 507 N.E.2d 269, 272 (1987). The separateness of the two agreements may not be ignored, 4 *Williston on Contracts* § 628, at 915; *see, e.g., Commons West Office Condos, Ltd. v. Resolution Trust Corp.*, 5 F.3d 125, 128 (5th Cir.1993) (citing *FDIC v. Singh*, 977 F.2d 18, 22–23 (1st Cir.1992)), particularly when the agency that had full power to decide the form of the documents so formulated them.

Moreover, inferring a HUD contract from the circumstances (imposing a contract im-plied in fact) is not permitted when the alleged contractor had no authority to enter into any such contract (to permit plaintiffs to prepay in 1993 or 1994 irrespective of any future amendment to the regulations then in effect), *see Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947) (United States not bound by contract its agent lacked authority to make), but, rather, was bound by the regulation permitting regulatory amendment at any time, *see* 24 C.F.R. § 236.249 (1971, 1973).

■ The section 236 regulations, which the parties agreed were to rule the conduct and performance of the RA (which itself was incorporated into ¶ 3 of the deed [9]), *see* Def. App. 10, 14, 34, 38, now clearly provide that prepayment is not permitted. Had the parties intended to prohibit government revision of the regulations in this fashion with respect to the plaintiffs, they clearly could have so provided, consistent with the "unmistakeability doctrine," *see United States v. Winstar Corp.*, —— U.S. ——, ——, 116 S.Ct. 2432, 2456, 135 L.Ed.2d 964 (1966),[10] in the only contract entered into by the government with the plaintiffs—the RA.

Finally, given the limited nature of this court's jurisdiction, *see Ransom v. United States*, 900 F.2d 242, 244 (Fed.Cir.1990) ("To maintain a cause of action pursuant to the Tucker Act that is based on a contract, the contract must be between the plaintiff and the government and entitle the plaintiff to money damages in the event of the government's breach of that contract."), the court hesitates to expand the reach of a contract not executed by the government, or allow money damages not provided for by that contract, for plaintiff's benefit.[11]

---

9. While the trust agreements (the deeds) incorporate the RAs by reference, Exhibit A to the deeds clearly states that the only purpose for such incorporation is to establish limitations on the actions that could be taken by a *holder* of the deed, in the event of default, to wit, to permit the holder to satisfy the indebtedness only to the extent this did not impair the Trustor's obligation under the Building Loan Agreement or the RA. Since no default of the mortgage has been alleged, there is no occasion for incorporating the RAs into the trust instruments.

10. Plaintiffs' lengthy argument that they are entitled to recover under *Winstar* is unavailing in light of the court's conclusion that, unlike that case, *see Winstar Corp.*, —— U.S. at —— – ——, 116 S.Ct. at 2448–452 (finding that the government entered into contracts with the plaintiffs), no contract between defendant and plaintiffs in this case incorporated the regulations then in effect.

11. Default by a mortgagor (such as plaintiffs) under mortgage instruments is generally remediable by foreclosure, not money damages. Default by a mortgagee, such as Weyerhauser,

*Conclusion*

For the reasons stated above, defendant's motion for partial summary judgment is granted.

would be unusual once the loan had been made (the mortgagee's principal obligation being to pay the note amount). Since HUD is neither a mortgagee nor a mortgagor, but simply an insurer of the mortgagee on behalf of the mortgagor, to ensure the mortgagor's payments, HUD's default of its obligation under the mortgage notes would be remediable solely by money damages payable to the mortgagee.

In sum, the mortgage/insurance instruments contain no provision, implicit or explicit, that would give plaintiffs-mortgagors a right to money damages from the mortgagee's insurer.